IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ERIC BLATTMAN, *individually and as an assignee of certain former members of E2.0, LLC*, LAMB FAMILY LLC, and DAVID STAUDINGER<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>THOMAS M. SIEBEL, DAVID SCHMAIER, JOHN DOE 1, and JANE DOE 2,<br><br>　　　　　Defendants. | C.A. No. 15-530-GMS |

**MEMORANDUM**

### I.　INTRODUCTION

The plaintiffs filed a Complaint (D.I. 1) on October 28, 2014 and an Amended Complaint on March 17, 2015 (D.I. 28) in the United States District Court for the Southern District of New York, asserting a claim under 15 U.S.C. § 78j (b) and 17 C.F.R. § 240.10b-5, and a common law claim for intentional fraudulent misrepresentations and omissions, and a claim for breach of contract. On April 24, 2015, the defendants filed a Motion to Dismiss the Amended Complaint, or in the Alternative, to Transfer under U.S.C. § 1404(A) (D.I. 33). The defendants' Motion to Transfer was granted on June 16, 2015 (D.I. 45), and the action was transferred to the District of Delaware. The court stayed this action pending resolution of the defendants' Motion to Dismiss. For the reasons that follow, the court will deny the defendants' motion to dismiss as to the fraud claims, but grant it as to the breach of contract claim.

## II. BACKGROUND

The plaintiffs owned interests in Efficiency 2.0, LLC ("E2.0") before its merger with C3, LLC. (D.I. 28 at ¶¶ 1–3.) Thomas Siebel was the Chief Executive Officer and majority owner of C3, LLC, and is now the Chairman and CEO of C3, Inc., its successor. (*Id.* at ¶ 4.) David Schmaier was the Chief Operating Officer of the C3 and was a holder of a significant minority interest in C3, LLC. (*Id.* at ¶ 5.) E2.0 was a start-up company based in New York City that provided energy efficiency software and program services to utilities companies and its small-to-medium business customers. (*Id.* at ¶¶ 13, 15.) C3, LLC provided energy and emissions management software solutions for large commercial and industrial companies. (*Id.* at ¶ 25.)

In early 2012, Siebel and Schmaier approached Thomas Scaramellino, the CEO and founder of E.20 to discuss a potential acquisition of E2.0 by C3. (*Id.* at ¶ 29.) Numerous negotiations between the defendants and E2.0 management resulted in a nonbinding Letter of Intent on March 30, 2012. (*Id.* at ¶ 33.) The plaintiffs allege that on four different occasions, Seibel and Schmaier spoke directly to E2.0 employees and convinced them to continue working at E2.0 after the merger by promising increased salaries and an unchanged work environment. (*Id.* at ¶ 35.)

According to the plaintiffs, Scaramellino informed Siebel and Schmaier that he would not enter into the proposed Merger Agreement unless 1) Siebel personally committed to cause C3 to fund the expansion of E2.0's business operations under a three-year budget, and 2) Siebel assured that the post-merger E2.0 would operate as a stand-alone business based in New York with its existing staff and management. (*Id.* at ¶ 37.) Plaintiffs allege that Siebel "sign[ed] off on, and approve[d]" the E2.0 three year budget. (D.I. 28 at ¶¶ 37–39.)

Around May 1, 2012, C3, LLC and a wholly-owned C3 subsidiary entered into an Agreement and Plan of Merger with E2.0 and a representative of the E2.0 Unitholders ("Merger Agreement"). (*Id.* at ¶ 41.) The Merger Agreement provided that C3 would be the sole owner of entity created by the merger. (*Id.*) In exchange, the former E2.0 Unitholders would receive shares of C3 stock and C3 would satisfy E2.0's outstanding indebtedness. (*Id.* at ¶ 42.)

The plaintiffs assert that over the course of the negotiations, the defendants knowingly made false representations and failed to disclose information to the plaintiffs that would expose the falsity of these statements. These include: 1) assurances that C3 was a going concern and its Units were worth $500 million (*id.* at ¶¶ 45–94); 2) guarantees that E2.0 would continue as a stand-alone business (*id.* at ¶¶ 95–115); and 3) Siebel's commitment to cause C3 to provide the capital funding for E2.0's expansion (*id.* at ¶ 116–128.). The plaintiffs claim that after the merger, they learned that the defendants never intended to fulfil any of these promises. They claim the E2.0 Unitholders sustained substantial financial losses, including receiving C3 shares worth less than one-third of the value represented by the defendants. (*Id.* at ¶ 133–135.) Additionally, Siebel took control of the surviving E2.0 Business Unit post-merger, refused to fun the approved budget, fired all of the former employees of E2.0, and shut down its New York office. (*Id.* at ¶ 137.)

## III. STANDARD OF REVIEW

### A. Federal Rules of Civil Procedure 8(a) & 12(b)(6)

The Federal Rules of Civil Procedure require that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). A defendant may move to dismiss a complaint if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While the complaint need not include "detailed factual allegations," it must at least contain "sufficient factual matter . . . to 'state a claim

for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). To be facially plausible a claim must be supported by "well-pleaded facts that permit the court to infer more than a mere possibility of misconduct." *Id.* at 679.

The issue before the court when deciding a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail" but, rather, whether the plaintiff's complaint is plausible enough to entitle him to offer evidence in support of his claims. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997). In evaluating a motion under Rule 12(b)(6), the court accepts all factual allegations in the complaint as true, so long as they are not simply "legal conclusions[s] couched as factual allegations[s]." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "[a] motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington*, 114 F.3d at 1420.

### B. Federal Rule of Civil Procedure 9(b)

Under Federal Rule of Civil Procedure 9(b), claims that allege fraud or mistake are subject to a heightened pleading standard; a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) serves to give defendants 'notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements.'" *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (alterations in original) (quoting *In re Burlington*, 114 F.3d at 1418). "Although [Rule 9(b)] falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use alternative means of injecting

4

precision and some measure of substantiation into their allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (internal quotation marks omitted).

### C. Private Securities Litigation Reform Act

A plaintiff must allege the following elements to state a claim for a violation of Rule 10b-5: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008). The Private Securities Litigation Reform Act ("PSLRA") addressed the pleading standard for the first two of these elements. *Material misrepresentation/omission*: "[T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). *Scienter*: "[T]he complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. § 78u-4b(2)(a). The standards imposed by the PSLRA are in addition to the traditional federal pleading requirements, set by Federal Rules of Civil Procedure 8, 9, and 12, and federal case law.[1] *See, e.g., Iqbal*, 556 U.S. 662; *Twombly*, 550 U.S. 544.

### IV.    DISCUSSION

In their complaint, the plaintiffs bring (1) a Section 10(b) fraud claim, (2) a common law fraud claim, and (3) a breach of contract claim. (D.I. 28.) The court will address each in turn.

---

[1] "To the extent that Rule 9(b) conflicts with the PSLRA, the statute supersedes it." *Key Equity Investors v. Sel-Leb Mktg.*, 246 F. App'x 780, 784 n.5 (3d Cir. 2007) (citing *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 531 n.5 (3d Cir. 1999)).

5

### A. Fraud Claims

The plaintiffs allege the defendants fraudulently conspired to cause C3 to acquire the plaintiffs' interest in E2.0. Both the Section 10(b) and common law fraud claims require the plaintiffs to prove they reasonably relied upon the defendants' alleged misrepresentations. The defendants argue that the plaintiffs' fraud claims should be dismissed because the alleged wrongdoing occurred in negotiations that preceded a contract. According to the defendants, the Merger Agreement's integration clause precludes a finding of reasonable reliance.

i. Section 10(b) Fraud Claim

To establish the reliance element of a Section 10(b) claim, the plaintiff must show "a causal nexus between the misrepresentation and the plaintiff's injury" and demonstrate that "the plaintiff exercised the diligence that a reasonable person under all of the circumstances would have exercised to protect his own interests." *AES Corp v. Dow Chem. Co.*, 325 F.3d 174, 178 (3d Cir. 2003). Reasonable reliance is a fact-specific inquiry, including factors such as "(1) whether a fiduciary relationship existed between the parties; (2) whether the plaintiff had the opportunity to detect the fraud; (3) sophistication of the plaintiff; (4) the existence of a long standing business or personal relationships; and (5) the plaintiff's access to the relevant information." *Id.* at 178–79. A nonreliance clause is only one factor district courts should consider when determining whether a plaintiff can establish the element of reasonable reliance. *Id.* at 183.

The Merger Agreement only includes an integration clause, not a nonreliance clause. *See In re Daimlerchrysler AG Securities Litig.*, 294 F. Supp. 2d 616, 623 (D. Del. 2003) ("[T]his case involves an Integration Clause, which is not explicit with respect to the issue of reliance as the non-reliance clause in *AES*."). As one of many factors for the court to consider, the integration

6

clause in the Merger Agreement does not categorically bar the plaintiffs' claim of reasonable reliance. The defendants' motion to dismiss the Section 10(b) claim is denied.

### ii. Common Law Fraud Claim

In *Kronenberg v. Katz*, 872 A.2d 568 (Del. Ch. 2004), the court held that for a contract to bar a fraud claim, "the contract must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract. The presence of a standard integration clause alone, which does not contain explicit anti-reliance representations and is not accompanied by other contractual provisions demonstrating with clarity that the plaintiff had agreed that it was not relying on facts outside the contract, will not suffice to bar fraud claims." *Id.* at 593. The integration clause here is almost identical to the one analyzed in *Kronenberg*.[2] The Merger Agreement does not include other anti-reliance representations of the kind required to bar a fraud claim. The court will not prematurely dismiss the plaintiff's common law fraud claim.

### B. Breach of Contract Claim

The plaintiffs base their breach of contract claim on Siebel's alleged promise to cause C3 to fund the three-year budget of E2.0. The defendants argue that the court should dismiss the claim based on 1) the Merger Agreement's integration clause and 2) the Statute of Frauds. According to

---

[2] The integration clause in *Kronenberg* states: "This Agreement, which includes the Exhibits and shall include any Joinders upon execution thereof, constitutes the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, understandings, inducements, or conditions, oral or written, express or implied." *Kronenberg v. Katz*, 872 A.2d 568, 587 (Del. Ch. 2004). The integration clause here states: "This Agreement and all other agreements referred to herein set forth the entire understanding of the parties hereto relating to the subject matter hereof and thereof and supersede all prior agreements and understandings among or between any of the parties relating to the subject matter hereof and thereof." (D.I. 21, Ex. A at 41.)

7

the defendants, the plaintiffs seek to enforce a three-year oral contract covering negotiations prior to the integrated Merger Agreement.

The Statute of Frauds requires a written contract for any agreement requiring performance over the course of more than one year. 6 Del. C. § 2714. Multiple writings will satisfy the Statute of Frauds if they (a) reasonably identify the subject matter of the contract, (b) indicate that the parties have a contract, and (c) state with reasonable certainty of the unperformed promises in the contract. *Olson v. Halvorsen*, 982 A.2d 286, 293 (Del. Ch. 2008).

In their amended complaint, the plaintiffs state that "Scaramellino asked that Siebel also sign off on, and approve, the E2.0 Business Unit Budget. . . . Siebel did so during the April 17 meeting." This does not support the existence of a written contract. It is ambiguous whether "sign off on" means that Siebel physically signed the budget. But even resolving that question in favor of the plaintiffs, they do not allege that the budget contains the subject matter of the contract—that is, Siebel's commitment to cause C3 to fund the budget. The Statue of Frauds requires a written document that memorializes Siebel's promise. His approval of the budget may support the existence of an oral contract, but it does not qualify as a written contract. There is a difference between signing the budget and promising funding for the budget. The plaintiffs also do not point to other documents which, combined, contain the contractual promises. Therefore, the plaintiffs' breach of contract claim is based on an oral contract barred by the Statute of Frauds. The court will dismiss the claim for breach of contract.[3]

---

[3] The court grants plaintiffs leave to amend their complaint if the budget or other writings did, in fact, include Siebel's promise regarding E2.0's funding. The court notes that applicability of the integration clause is a disputed factual question, and the court would not dismiss the contract claim on that basis.

## V. CONCLUSION

For the foregoing reasons, the court will partially grant the defendants' motion to dismiss for failure to state a claim.

Dated: April 12, 2016

_____
UNITED STATES DISTRICT COURT