IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERIC BLATTMAN, individually and as an Assignee of certain former members of E2.0 LLC, LAMB FAMILY, LLC, and DAVID STAUDINGER,<br><br>    Plaintiffs,<br>    Counterclaim Plaintiffs,<br><br>v.<br><br>THOMAS M. SIEBEL, DAVID SCHMAIER, JOHN DOE I, AND JANE DOE 2,<br><br>    Defendants,<br><br>C3, INC. d/b/a C3 IoT<br>    Defendant,<br>    Counterclaim Defendant. | C.A. No. 15-530 (GMS)<br>**CONSOLIDATED** |

## ORDER

WHEREAS, on October 28, 2014, Plaintiffs, David Staudinger and Eric Blattman (collectively, "Plaintiffs"), filed a Complaint against Jane Doe 2, John Doe 1, David Schmaier, and Thomas M. Siebel, (collectively, "Defendants"). (D.I. 1);

WHEREAS, on March 17, 2015, Plaintiffs filed an Amended Complaint, (D.I. 28), and on April 7, 2017, Plaintiffs filed a Second Amended Complaint adding C3, Inc. as a Defendant and alleging fraud, intentional fraudulent misrepresentations and omissions, and breach of contract. (D.I. 190);

WHEREAS, presently before the court, is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a). (D.I. 314, 315);[1]

---

[1] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). A genuine dispute exists "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* The moving party bears the burden of proving that summary judgment should be granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). The district court must view the evidence in the light most favorable to the nonmoving party and draw inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* The party opposing summary judgment must present more than just "mere allegations, general denials, or . . . vague statements" to show the existence of a genuine issue. *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Defendants contend that, based on the available evidence of record, each of Plaintiffs' three claims fail as a matter of law because they have not established an essential element of each of their claims.

At the outset, Defendants briefly contend that Plaintiffs lack standing to bring claims on behalf of non-Plaintiff unitholders who assigned Mr. Blattman the right to pursue relief on their behalf. (D.I. 315 at 9-10.) While Defendants argue that no unitholders aside from Todd Arky and Foxhill Opportunity Fund testified or provided evidence to support fraud, "[a]n assignment purports to transfer ownership of a claim to the assignee, giving it standing to assert those rights and to sue on its own behalf." (D.I. 315 at 10, n.5); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, No. 17-1663, 2018 WL 2224394, at *7 (3d Cir. May 16, 2018); *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 271, 290 (2008) ("an assignee of a legal claim for money owed has standing to pursue that claim in federal court . . . even when the assignee has promised to remit the proceeds of the litigation to the assignor."). In this case, the assignment documents of nineteen former E2.0 unitholders are explicit that each such unitholder "assigns, grants, and transfers" to Mr. Blattman "all rights, title, interest, and authority" in their claims. (D.I. 322 at 10.) The court, therefore, finds that the assignment of rights to Mr. Blattman properly confers standing.

In Count I, Plaintiffs bring a claim under Section 10(b) and Rule 10b-5 of the Exchange Act. 15 U.S.C. 78j(b); 17 C.F.R. 240. 10b-5; (D.I. 190 at 47.) Preliminarily, Defendants assert that a Section 10b-5 claim is subject to a two-year statute of limitations that accrues from the moment a plaintiff discovers the violation or when "a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation,'" (D.I. 315 at 11); *Merck & Co. v. Reynolds*, 559 U.S. 663, 653 (2010)(quoting § 1658(b)(1)). While Defendants argue Plaintiffs were on notice of all the alleged falsity by May 5, 2012, Plaintiffs provide evidence that it was not until after November 2012 when Plaintiff Blattman began reviewing C3's internal documents that he discovered the wrong and misleading representations. (D.I. 315 at 11-12); (D.I. 224, ¶ 67); (D.I. 322 at 13.) Thus, a reasonable jury might find that Plaintiffs did not learn about the alleged misrepresentations until November 2012.

To state a claim for securities fraud under Section 10(b) and Rule 10b-5, Plaintiffs must allege: (1) a material misrepresentation or omission by defendant, *i.e.*, falsity; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5; *In re Wilmington Tr. Sec. Litig.*, 29 F. Supp. 3d 432 (D. Del. 2014).

Turning to the first disputed element, Defendants assert that they made no misrepresentations in the *written* Term Sheet and Merger Agreement with Plaintiffs. (D.I. 315 at 14.) It is well-settled, however, that Rule 10b-5 allows a party to bring a securities fraud claim based on statements outside of a written agreement. *Chase Manhattan Mortg. Corp. v. Advanta Corp.*, 2004 WL 422681 at *6-7 (D. Del. Mar. 4, 2004). Similarly, under Delaware law, "[i]f parties fail to include unambiguous anti-reliance language, they will not be able to escape responsibility for their own fraudulent representations made outside of the agreement's four corners." *Abry Partners V, L.P. v. F&W Acquisitions LLC*, 891 A.2d 1032, 1059 (Del. Ch. 2006). Here, the record shows that the Term Sheet states that the merger consideration paid to Plaintiffs would be "calculated based on valuation of $500 million (before taking into account

2

the Acquisition)." (D.I. 322 at 15-16.) The Merger Agreement also states that C3 had around 150 million shares outstanding with the value of the Parent Unit at $3.33, which amounts to a valuation around $500 million. (D.I. 322 at 16.) According to a Declaration provided by Plaintiffs, the value of C3, however, was around half of that value. (D.I. 322, Ex. 21 at 19.) Thus, a reasonable jury could find that the representation that C3 was around $500 million in value was fundamental to Plaintiffs' understanding of the consideration they would receive in the merger. (D.I. 322 at 16.)

Next, Defendants assert that Plaintiffs cannot prove *reasonable reliance* as a matter of law, which is required under both Section 10(b) and common law fraud. (D.I. 315 at 16.) The court rejected this argument at the motion to dismiss stage when it held that the *integration clause* in the Merger Agreement does not categorically bar reasonable reliance as to Plaintiffs' federal securities fraud claim, and "[t]he Merger Agreement does not include other anti-reliance representations of the kind required to bar a fraud claim" under Delaware law. (D.I. 64 at 6-7.) Nothing in the parties' documents has changed since the time of that ruling.

The third contested element of fraud, scienter, "is a mental state embracing intent to deceive, manipulate, or defraud, and requires a knowing or reckless state of mind." *Inst. Investors Group v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009). Defendants argue Plaintiffs provide no evidence that Defendants misrepresented C3's value, lacked intent to grow E2.0's business post-merger, or knowingly misrepresented an intention to allow E2.0 to operate as a standalone business. (D.I. 315 at 19-20.) Here, a reasonable jury could find evidence of scienter because Plaintiffs provided evidence (1) that C3 denied E2.0 access to unfavorable customer comments; and (2) that internal emails and transcripts demonstrate Defendants' employees attempted to skew Plaintiffs' due diligence to present a misleading picture of C3. (D.I. 322 at 6, 19.)

Last, Defendants argue Plaintiffs fail to demonstrate an economic loss. *McCabe v. Ernst & Young, LLP.*, 494 F.3d 418, 426 (3d. Cir. 2007); (D.I. 315 at 21.) "Loss causation requires plaintiffs to show that 'the defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiffs economic loss.'" *In re Wilmington Tr. Sec. Litig.*, 29 F. Supp. 3d 432, 450 (D. Del. 2014) (citing *McCabe*, 494 F.3d at 430). A "Plaintiff may adequately plead loss causation by alleging either a corrective disclosure of a previously undisclosed truth that causes a decline in the stock price or the materialization of a concealed risk that causes a stock price decline." *Id.* (citing *In re Am. Intern. Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 533 (S.D.N.Y. 2010)). The Court of Appeals for the Third Circuit has recognized a distinction between "typical" fraud on the market claims and "non-typical claims" explaining that in non-typical claims, "the factual predicates of loss causation fall into less of a rigid pattern." *McCabe*, 494 F.3d at 425-26 (explaining the Third Circuit has found sufficient loss causation, for example, where a plaintiff was "induced to make an investment of $1.4 million which turned out to be worthless.").

In this case, unlike typical Rule 10b-5 cases, there is no market for C3 shares, thus, there is no market reaction to measure. (D.I. 322 at 19.) Plaintiffs allege that Defendants' misrepresentations resulted in an overstated valuation of C3, thus, the C3 shares given to Plaintiffs did not match the value bargained for. (D.I. 322 at 20.) Here, Plaintiffs provide a declaration demonstrating that their economic loss occurred because the actual valuation of C3 at the time of the merger was about half the value Defendants represented. (D.I. 322 at 20, Ex. 21 at 19.) There are clearly disputes of material fact regarding these allegations that, if resolved in Plaintiffs' favor, could lead a reasonable jury to render a verdict in their factor. Thus, the court will deny Defendants' Motion as to the securities fraud claim. (D.I. 322 at 14.)

In Count II, Plaintiffs bring a common law fraud claim under Delaware law for intentional fraudulent misrepresentations and omissions. (D.I. 315 at 10); (D.I. 322 at 11.) Under Delaware law, "the party seeking enforcement of the release bears the burden of proving that the released claim was within the contemplation of the releasing party." *E.I. du Pont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461 (Del. 1999). Defendants argue that Plaintiffs' common law fraud claim is barred by releases made under Delaware law several days before the transaction closed, which stated Plaintiffs "irrevocably, unconditionally and completely waive[] and relinquish[] each and every Claim that such [Plaintiff] may have had in the past, may now have or may have in the future against any of the [Defendants], directly or indirectly relating to or directly or indirectly arising out of any events, matters, causes, things, acts, omissions or conduct relating directly or indirectly to the [merger] or otherwise and occurring or existing at any time *up to and including the date of this Agreement . . . ."* (D.I. 315 at 10-11); (D.I. 322 at 12.)

Plaintiffs assert that Delaware law does not does not account for anticipatory release of unknown claims of fraudulent inducement and that the release did not intend to cover claims arising in the future. (D.I. 322 at 11.) "[T]o give meaning and effect to agreements which release fraud claims, courts generally hold that: 'A party [who] releases a fraud claim may later challenge that release as fraudulently induced only if [the party] can identify a separate fraud from the subject of the release.'" *Marcus v. Rapid Advance, LLC*, 2013 WL 2458347, at *8 (E.D. Pa. June 7, 2013) (citing *Centro Empresarial Compresa S.A., et al. v. America Movil, S.A.B. de C.V., et al.*, 17 N.Y.3d 269, 276, 929

3

WHEREAS, having considered the parties' positions as set forth in their papers, the pleadings, as well as the applicable law;

IT IS HEREBY ORDERED THAT:

1. The Defendants' Motion for Summary Judgment (D.I. 314) is DENIED in full.

Dated: June 7, 2018

_____
UNITED STATES DISTRICT JUDGE

---

N.Y.S.2d 3, 952 N.E.2d 995 (2011) (citing *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 527–28 (2d Cir. 1985)); *Seven Instruments, LLC v. AD Capital, LLC*, 32 A.3d 391, 396–400 (Del. Ch. 2011) (to set aside a release for fraud, the alleged fraud must be "different sequentially and conceptually" form the fraud that was the subject of the settlement) (quoting *E.I. DuPont de Nemours and Co.*, 744 A.2d at 457). Plaintiffs also argue that at the time of the release the fraud claims did not exist yet because the merger had not closed, thus, the inducement to merge companies had not occurred. (D.I. 322 at 12.) Here, a reasonable jury could find that the alleged fraud occurred after the parties executed the releases. The court will, therefore, deny Defendant's Motion as to the common law fraud claim.

In Count III, Plaintiffs bring a breach of contract claim against C3. (D.I. 190 at 50.) In the context of a claim for breach of contract, the question of "bad-faith" is fact-sensitive requiring the trier of fact to consider the "precise context of the contractual bargain," and whether Defendants' actions were "commercially reasonable." *ev3, Inc. v. Lesh*, 114 A.3d 527, 539 (Del. 2014). Defendants argue Plaintiffs cannot succeed on either (1) their Earnout claim because they cannot prove Defendants acted in "bad faith;" or (2) their claim for Holdback Units because Plaintiffs fail to satisfy contractual obligations under the Agreement. (D.I. 215 at 23-24.)

First, Defendants assert that the Earnout claims cannot succeed because some E2.0 employees, including the former CEO, Scaramellino, testified that they made "business decisions" brought about by the poor performance of the office and that Plaintiffs understood that Defendants would have "sole discretion" in managing C3 post-merger with "no obligation to operate." (D.I. 315 at 23-24.) Plaintiffs, however, assert that while Scaramellino gave testimony denying Defendants' bad faith, he did so pursuant to a transaction where he was paid more than $750,000 and where Defendants paid his legal fees. (D.I. 322 at 23.) Moreover, at Mr. Scaramellino's deposition he could not name a decision made by Defendant Siebel that helped E2.0 nor could he discern a basis for the "business decisions." (D.I. 322 at 7, 24.) Additionally, a reasonable jury could find in favor of Plaintiffs based on evidence that within weeks of the Merger of C3 and E2.0, Defendants began firing E2.0 employees, transferring responsibility from E2.0 customer accounts to C3 employees, and terminated E2.0's relationship with its software developer. (D.I. 322 at 23.)

Second, with regard to the Holdback Units, a portion of the merger consideration not tendered at the time of merger, Defendants argue that Plaintiffs fail to satisfy the contractual obligations under the Agreement and, therefore, cannot recover before taking adequate steps under the contract. (D.I. 315 at 25.) Specifically, Defendants assert that C3 sought indemnification pursuant to the terms of the Merger Agreement and the Securityholder Representative has not challenged C3's indemnification rights, which is required for Plaintiffs to recover. (D.I. 315 at 25.) Plaintiffs, however, assert that Scaramellino, the Securityholder Representative under the Merger Agreement, sent C3 a letter on November 13, 2013 responding to its indemnification claim and contesting the claim in full, to which Defendants never responded. (D.I. 315 at 24-25, Ex. 38.) There are clearly disputes of material fact between the parties that, if resolved in favor of Plaintiffs, could lead a reasonable jury to render a verdict in their favor. Therefore, the court will deny Defendants' Motion as to the breach of contract claim.