IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ERIC BLATTMAN, individually and as an )
assignee of certain former members of E2.0 )
LLC, LAMB FAMILY LLC, and DAVID )
STAUDINGER, )
　 )
　 )
Plaintiffs/Counterclaim )
Plaintiffs, )
　 )
v. )      C.A. No. 1:15-cv-00530-CFC
　 )
　 )      **CONSOLIDATED**
THOMAS M. SIEBEL, DAVID )
SCHMAIER, JOHN DOE 1, AND )
JANE DOE 2, )      **PUBLIC VERSION**
　 )
　 )
Defendants, )
　 )
C3, INC. d/b/a C3 IoT )
　 )
Defendant/Counterclaim )
Defendant. )

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF
THEIR MOTION FOR ATTORNEYS' FEES**

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
Kenneth J. Nachbar (#2067)
Lauren Neal Bennett (#5940)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
knachbar@mnat.com
lbennett@mnat.com
*Attorneys for Defendants*

OF COUNSEL:

Michael B. Carlinsky
Edward J. DeFranco
Joseph Milowic III
John H. Chun
Jesse Bernstein
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
eddefranco@quinnemanuel.com
josephmilowic@quinnemanuel.com
johnchun@quinnemanuel.com
jessebernstein@quinnemanuel.com

Kevin P.B. Johnson
Michael T. Lifrak
David E. Myre
William T. Pilon
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
kevinjohnson@quinnemanuel.com
michaellifrak@quinnemanuel.com
davidmyre@quinnemanuel.com
williampilon@quinnemanuel.com

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................1

FACTUAL BACKGROUND ..................................................................4

THE COURT'S ORDER ON BEHALF OF DEFENDANTS ...................6

FEES SOUGHT ....................................................................................7

ARGUMENT ........................................................................................7

I.    The Motion is Timely ...................................................................7

II.    Defendants Are Entitled to Reasonable Attorneys' Fees Under the
Merger Agreement .......................................................................8

III.    Defendants' Attorneys' Rates Are Reasonable ..............................9

      A.    Quinn Emanuel's Rates ......................................................10

      B.    Cooley's Rates ..................................................................12

      C.    Delaware Counsel's Rates ..................................................13

IV.    The Number of Hours Expended by Defendants' Attorneys Was
Reasonable. ...............................................................................15

CONCLUSION ...................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Academy of Television Arts & Sciences v. National Academy of Television Arts & Sciences, Am. Arbitration Assoc.,*
Case No. 72 140 00247 07 JENF (May 19, 2008) ............................................12

*Bistro Executive, Inc. v. Rewards Network, Inc.,*
Case No. 04-cv-4640-CBM (C.D. Cal. Nov. 19, 2007) ....................................12

*Brandin v. Gottlieb,*
2000 WL 1005954 (Del. Ch. July 13, 2000) ....................................................9

*City of Burlington v. Dague,*
505 U.S. 557 (1992).........................................................................................15

*DIRECTV, Inc. v. NWS Corp., Am. Arbitration Assoc.,*
Case No. 72 494 Y 00219 09 NOLG (June 15, 2010) .....................................11

*Greenstar, LLC v. Heller,*
934 F. Supp. 2d 672 (D. Del. 2013).................................................................9

*Hensley v. Eckerhart,*
461 U.S. 424 (1983).........................................................................................15

*In re Am. Home Mortgage Holdings, Inc.,*
Case No. 07-11047, Dkt. 3695 (Bankr. D. Del. Apr. 14, 2008)......................12

*In re Hospital Acquisition LLC,*
Case No. 19-10998-BLS, Dkt. 580 (Bankr. D. Del. Sept. 16, 2019) ...............14

*Interfaith Cmty. Org. v. Honeywell Intll, Inc.,*
426 F.3d 694 (3d Cir. 2005) .............................................................................9

*Kattan ex rel. Kattan v. District of Columbia,*
995 F.2d 274 (D.C.Cir.1993)...........................................................................10

*Liqwd, Inc. v. L'Oreal USA, Inc.,*
2019 WL 6840353 (D. Del. Dec. 16, 2019) ............................................. 11, 15

*Lockton v. O'Rourke,*
Case No. BC361629 (Cal. Super. Ct. Feb. 23, 2011)......................................12

*Monrovia Nursery Co. v. Rosedale,*
Case No. BC351140 (Cal. Super. Ct. Jan. 12, 2009) ......................................12

*Packaging Advantage Prop. Assocs., LLC v. Packaging Advantage Corp.,*
Case No. VC045957 (Cal. Super. Ct. Nov. 6, 2007).......................................12

*Perdue v. Kenny A. ex rel. Winn,*
559 U.S. 542 (2010)................................................................................... 10, 15

*Prandini v. National Tea Co.*,
   585 F.2d 47 (3d Cir.1978) ................................................................4

*Public Interest Research Group of N.J., Inc. v. Windall*,
   51 F.3d 1179 (3d Cir. 1995) ............................................................4

*Riverside Cnty. Dept. of Mental Health v. A.S.*,
   Case No. 08-cv-00503-ABC (C.D. Cal. Feb. 22, 2010)....................12

*Salman v. Nat'l Media Corp.*,
   1994 WL 465535 (Del. Super. Ct. July 22, 1994)............................8

*Sparton Corp. v. O'Neil*,
   2018 WL 3025470 (Del. Ch. June 18, 2018)................................8, 9

*Transweb, LLC v. 3M Innovative Props. Co.*,
   No. 10-cv-04413-FSH (D.N.J. Sept. 24, 2013) ..............................11

### Rules and Regulations

Fed. R. Civ. P. 54(d)(2)(B)(i) ......................................................................7

Local Rule 54.1(a)(1)....................................................................................17

## **INTRODUCTION**

This action involved serious but unsubstantiated allegations by lead-plaintiff Eric Blattman and other former E2.0 unitholders ("Plaintiffs") who, for more than five years, pursued baseless claims which falsely accused Defendants C3.ai, Thomas Siebel, and David Schmaier ("Defendants") of federal securities fraud, Delaware common law fraud, crime-fraud, and breach of a merger agreement between E2.0 and C3. The significance of these allegations cannot be overstated. Allegations of fraud, even if false and unproven, cast a cloud of uncertainty over the accused. For a (now-successful) start-up like C3, allegations of fraud can impact fundraising and market perception of the company to the detriment of the company's shareholders. For individuals like Siebel and Schmaier, who have "won national recognition" for their "previous success with a software start-up" (D.I. 376 at 3-4), the consequences are just as (if not more) significant. It can impact the reputations they spent years developing or, worse yet, could possibly ruin their careers for no legitimate reason. Had Eric Blattman prevailed in his meritless fraud and crime-fraud claims against Mr. Siebel and Mr. Schmaier, their professional careers would have effectively been destroyed and enormous damage would have been inflicted upon the shareholders of C3, of which Mr. Siebel was the CEO. As a result, it was both an existential necessity that Mr. Siebel and Mr. Schmaier mount a thorough and rigorous defense as well as a fiduciary obligation

1

*of Mr. Siebel in his role as CEO of C3.*

On multiple occasions before this suit commenced, in an attempt to avoid a protracted and expensive dispute regarding a meritless set of claims, Defendants repeatedly implored Mr. Blattman and his cohort of formed E2.0 unitholders to avoid litigation, warning that if Plaintiffs proceeded "they would have to pay C3's legal fees." Trial Tr. 2494:7-13.   Plaintiffs ignored Defendants' multiple pre-suit entreaties, and the Rule 11 motion (D.I. 193), summary judgment motion (D.I. 314), and *Daubert* motion seeking to exclude Plaintiffs' damages expert (D.I. 337) that followed, each which laid out in detail the fatal flaws in Plaintiffs' claims.

Prior to trial, the Court even excluded the testimony of Plaintiffs' ***sole*** damages expert, finding his "proffered testimony" would "not assist the Court in understanding the evidence or determining facts in issue and, to the extent any of the proffered testimony was not hearsay and could be relevant, its probative value is substantially outweighed by the waste of time and needless presentation of cumulative evidence the testimony would cause." (D.I. 363.)   Undeterred by his inability to show damages, Mr. Blattman—who was involved in the drafting of the complaint, and obtained assignments from other E2.0 Unitholders to bring claims on their behalf pursuant to which he stood to gain an additional 10% of any recovery after paying attorney's fees (Trial Tr. 1642:22-1643:22)—pursued Plaintiffs' facially baseless claims through trial.

The Court conclusively rejected each of Plaintiffs' claims.  It recognized that without the merger, E2.0 was set to "run out of cash by the end of February 2012, and thus Blattman deemed the company's capital position to be 'problematic' going into 2012." (D.I. 376, at 4.)  It found that, in light of this, for Mr. Blattman and the other plaintiffs their motivations were transparent: "[t]he entire thesis of [a merger] was to get stock early on in ... Siebel's next multibillion dollar company." (D.I. 376, at 8 (citing Tr. 1335:21-23).   And then the Court repeatedly held that when the Plaintiffs—despite having received shares in the now multi-billion dollar company C3—were dissatisfied that they did not receive more, they provided testimony that "lacked credibility" in pursuing baseless claims for fraud and breach of contract. (D.I. 376, at 11 (emphasis added); *see also id.* at 21 ("I give no credit to [Plaintiffs' witness Andy] Frank's trial testimony"), *id.* at 22 ("I similarly will disregard Blattman's testimony"); *id.*at 31 (the Court "did not find [Blattman] to be" a "credible witnesses) (emphasis added).)

Plaintiffs' reckless and greedy decision to pursue their claims despite their clear lack of merit forced Defendants to spend more than $10 million in legal fees and expenses defending a case that should have never been brought in the first place.   Indeed, while Defendants would have preferred to avoid these expenses, they were necessary to defend against Plaintiffs' continually shifting and overreaching allegations that went so far as to include assertions of "crime-fraud."

3

(*See* D.I. 291.)  The Court conclusively rejected any allegations of "crime," "fraud," or "breach of contract" by Defendants, as confirmed in its January 29, 2020 Memorandum Opinion finding "in favor of" Defendants "on all three claims for relief alleged," and awarding Defendants "their reasonable attorneys' fees, costs, and disbursements" under Section 7.3 of the parties' Merger Agreement.  (D.I. 376, at 51; *see also* D.I. 304.)  Defendants thus respectfully submit this memorandum in support of their application for an Order awarding them $10,141,326.66 in fees and expenses incurred defending this meritless lawsuit, which will inure to the benefit of all C3 shareholders who were damaged by Plaintiffs' improper pursuit of this lawsuit since 2014.[1]

## FACTUAL BACKGROUND

Lead-plaintiff Mr. Blattman and other former E2.0 unitholders brought this action on October 28, 2014, asserting claims for securities fraud, common law fraud, and breach of contract arising out of the merger between C3 and E2.0.  (D.I. 1, 120, 190).  Before this case was filed, when Plaintiffs first threatened suit, Defendants described the baseless nature of Plaintiffs' claims and, in an attempt to

---

[1]   Defendants reserve the right to supplement this amount with any costs and fees incurred in pursuing this fee petition.  *See Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978) ("the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award."); *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1190 (3d Cir. 1995) ("legal services rendered in a dispute over the attorneys' fees due a prevailing plaintiff are recoverable under a fee shifting statute").

persuade Plaintiffs to stand down, repeatedly warned that, if Plaintiffs proceeded, "they would have to pay C3's legal fees" pursuant to Section 7.3 of the Merger Agreement. (Trial Tr. 2494:7-15).

Despite these written communications, lead-plaintiff Mr. Blattman proceeded to assist in drafting a complaint, obtain assignments from other E2.0 Unitholders to bring claims on their behalf, (Trial Tr. 1642:22-1643:22), and then approved the filing of this action. Mr. Blattman's incentive in doing so is clear: he wanted to unjustly enrich himself as, under the terms of the assignments he negotiated, Mr. Blattman stood to gain an additional 10% of any recovery from Defendants in this lawsuit (after deducting attorney's fees). (*Id.*)

The parties litigated this case heavily for over the next <u>five years</u>, engaging in significant document and written discovery, and arguing a multitude of motions and other disputes in this Court. *See* Declaration of Michael Carlinsky, submitted herewith ("Carlinsky Decl."), ¶¶ 4, 15. Those disputes included a number of unnecessary and failed motions brought by Plaintiffs, including a motion to file a third amended complaint adding a new claim three years into the case (D.I. 293), and an attempt to invoke the crime-fraud exception to invade Defendants' privileged communications (D.I. 304). In total, Defendants took 15 fact depositions and 2 expert depositions, and defended 12 fact depositions and 3 expert depositions. (*Id.* ¶ 4). The parties exchanged over a half million pages of

documents.  *Id.*  Mr. Blattman himself was involved in discovery in this case, reviewing documents "throughout the course of this litigation." (Trial Tr. 1562:20-1563:6).

Over the course of the litigation prior to trial, Defendants repeatedly highlighted the dispositive flaws in Plaintiffs' case seeking to avoid further time and expense incurred on this action by both the parties and the Court.  (*See, e.g.*, Trial Tr. 2494:7-13; D.I. 193; D.I. 314; D.I. 337.)  Nevertheless, Plaintiffs pressed this case through trial, significantly increasing Defendants fees and expenses through each stage of the litigation.

## THE COURT'S ORDER ON BEHALF OF DEFENDANTS

After a seven-day bench trial in February 2019, the Court found in favor of Defendants on all claims asserted by Plaintiffs.  (D.I. 376 at 51).  The Court found that it was "evident from the credible testimony of Siebel, Schmaier, and Scaramellino and from the emails and internal memoranda contemporaneous with the merger negotiations that C3 was honest and forthcoming in its dealings with E2.0."  (D.I. 376, 44-45.)  Indeed, the Court repeatedly held that C3's witnesses provided "credible" testimony confirming no misconduct occurred (D.I. 376 at 11, 21, 24, 37-38, 44-45),  while finding Plaintiffs' witness testimony was not credible given the "demeanor" of the witnesses and the fact that their testimony was "contradicted" by other credible evidence.  (*See, e.g.*, D.I. 376 at 11, 21, 31.)

After "find[ing] in favor of Defendants on all claims for relief alleged in Plaintiffs' Second Amended Complaint," the Court appropriately found that Defendants are entitled to their fees and costs under Section 7.3 of the Merger Agreement. (*Id.* at 51). In accordance with the Court's ruling, Defendants now submit this motion detailing the reasonable attorneys' fees and disbursements they incurred in defending this action.

## FEES SOUGHT

As set forth in the accompanying declarations, Defendants seek recovery of the following attorneys' fees and disbursements:

| Firm | Hours | Fees/ Disbursements |
|---|---|---|
| Quinn Emanuel Urquhart & Sullivan LLP (Lead National Counsel) | 11,197 | $9,723,092.06 |
| Cooley LLP (Prior Lead National Counsel) | 377.5 | $148,434.31[2] |
| Morris, Nichols, Arsht & Tunnell, LLP (Delaware Counsel) | 364.3 | $257,589.07 |
| Potter Anderson & Corroon, LLP (Prior Delaware Counsel) | 26.3 | $11,799.73 |
| Parkowski, Guerke & Swayze, P.A. (Conflicts Counsel) | 0.7 | $411.50 |
| **TOTAL** | 11,966 | $10,141,326.66 |

## ARGUMENT

## I.    The Motion is Timely

A motion for attorneys' fees must be filed within 14 days after the entry of judgment. FRCP 54(d)(2)(B)(i). Judgment was entered in this case on January 29,

---

[2]   As described in Section IV, below, this reflects a significant reduction in fees and expenses Cooley spent on this matter which was negotiated by Defendants.

2020, and this motion for attorneys' fees was filed 14 days later, on February 12, 2020.  D. I. 378.  Thus, this motion is timely.

## II.   **Defendants Are Entitled to Reasonable Attorneys' Fees Under the Merger Agreement**

Section 7.3 of the Merger Agreement provides that if  "any Legal Proceeding relating to this Agreement or the enforcement of any provision of this Agreement is brought against any party hereto, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements (in addition to any other relief to which the prevailing party is entitled)."  (DTX-006.38, §7.3). Fee-shifting provisions, such as Section 7.3 of the Merger Agreement, are enforceable under Delaware law.  *Sparton Corp. v. O'Neil*, 2018 WL 3025470, at *5 (Del. Ch. June 18, 2018); *Salman v. Nat'l Media Corp.*, 1994 WL 465535, at *4 (Del. Sup. Ct. July 22, 1994) (interpreting "unambiguous" provision that required losing party to "pay all costs and expenses (including attorneys' fees and disbursements)" and awarding, in addition to attorneys' fees, "photocopying; travel costs; mail and courier expenses; the cost of automated research; manual research expenses; [and] costs associated with the testimony [of a witness]").

Fee-shifting provisions apply not only to contract claims, but also to claims for fraud relating to the agreement containing the provision.  *Sparton*, 2018 WL 3025470, at *5 (enforcing fee-shifting provision in merger agreement to award fees to the prevailing party in a fraud claim).  As this Court correctly found, Defendants

are the prevailing party on all claims in this litigation.[3]  D.I. 376 at 51.  Indeed, the

Court repeatedly confirmed Defendants' witnesses provided "credible" testimony

confirming no misconduct occurred (D.I. 376 at 9, 11, 21, 24, 37-38, 44-45), while

finding that Plaintiffs' witnesses were not.  (D.I. 376 at 21 (giving "no credit to

[Plaintiffs' witness Andy] Frank's trial testimony") *id.* at 31 (noting that the Court

"did not find [Blattman] to be" a "credible witness").)

There can be no dispute about the lack of merit of Plaintiffs' claims.  On no

less than four occasions, the Court commented that the Plaintiffs' testimony was

not "credible."  (D.E. 376 at 11 n.2, 21, 31, 35).

Accordingly, Defendants are entitled to their attorneys' fees and

disbursements under Section 7.3 of the Merger Agreement.

## III.   **Defendants' Attorneys' Rates Are Reasonable**

The rates charged by each firm are reasonable given the quality and

expertise of each firm, and in light of prevailing market rates charged by similar

firms.  *See Interfaith Cmty. Org. v. Honeywell Intll, Inc.*, 426 F.3d 694, 708 (3d

Cir. 2005), as amended (Nov. 10, 2005) ("[T]o determine the prevailing market

---

[3]   Indeed, Defendants would be entitled to all of their fees as the prevailing party even if they had only prevailed on the fraud claim, since fraud issues predominated in this litigation.  *See Greenstar, LLC v. Heller*, 934 F. Supp. 2d 672, 697 (D. Del. 2013) ("a contractual provision entitling the prevailing party to fees will usually be applied in an all-or-nothing manner"); *Brandin v. Gottlieb*, 2000 WL 1005954, at *28 (Del. Ch. July 13, 2000) (awarding fees to party prevailing on fraud claims); *Sparton*, 2018 WL 3025470, at *5 (same).

rates in the relevant community, a court must assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").

"[A]n attorney's usual billing rate" is presumed to be "the reasonable rate, provided that this rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Kattan ex rel. Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C.Cir.1993). *See also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (explaining that "the quality of a prevailing party's counsel's representation" should be "reflected in the reasonable hourly rate").

### A.    <u>Quinn Emanuel's Rates</u>

Quinn Emanuel acted as lead national counsel for Defendants.   Quinn Emanuel's hourly rates for this matter ranged from $370 per hour for a law clerk to $1,237.50 per hour for the lead partner.  Appendix A (QE Invoices).  These reflect an across-the-board 10% discount on Quinn Emanuel's typical rates.  Carlinsky Decl. ¶ 6; Appendix A.  The total amount billed divided by total hours worked reflects an effective blended rate of <u>**$868**</u>.

The partners who worked on this matter charged an average rate of $1,056 an hour in 2019.  Carlinsky Decl. ¶ 7.  These hourly rates are lower than average

partner billing rates at other top national firms.  For example, according to a 2017 ALM Billing Report, the average hourly rate for a partner *in 2017* (three years ago) was $1,135 per hour at Sidley Austin, $1,115 per hour at Kirkland & Ellis, and $1,320 per hour at Paul, Weiss.  National Law Journal, ALM Legal Intelligence, NLJ Billing Report (2017) ("2017 NLJ Billing Report") at 9, 16, 18.  Further, the vast majority of the work in this case was performed by partners billing *below* the average rate: 2,296.7 partner hours billed at rates below $1,056 compared to 1,024.3 hours billed at rates above the average.

Similarly, the average $678.38 per hour rate charged by the associates on the Quinn Emanuel team (in 2019) is lower than associate rates at comparable firms: $735 per hour at Kirkland & Ellis and $995 per hour at Paul, Weiss (again, *in 2017*) at 9, 18.[4]  *Compare* Carlinsky Decl. ¶ 7 *with* 2017 NLJ Billing Report.

Courts have regularly found Quinn Emanuel's rates to be reasonable.  Most recently, this Court awarded Quinn Emanuel's client over $11 million in fees, where the "fees charged for the core attorneys range from their highest hourly rates of $705.00 to $1,040." *Liqwd*, 2019 WL 6840353, at *12.[5]

---

[4]   Sidley Austin's associate rates are not reported on the 2017 NLJ Billing Survey.
[5]   *See also* Report and Recommendation of Special Master, *Transweb, LLC v. 3M Innovative Props. Co.*, No. 10-cv-04413-FSH (D.N.J. Sept. 24, 2013) (ECF No. 567) (Special Master's ruling finding that Quinn Emanuel was a "premier litigation firm" and that total fees of $26,146,493.45 were reasonable); Final Award, *DIRECTV, Inc. v. NWS Corp.*, Am. Arbitration Assoc., Case No. 72 494 Y 00219 09 NOLG (June 15, 2010) (find Quinn Emanuel's rates and hours reasonable);

### B.   Cooley's Rates

Cooley acted as lead national counsel for Defendants from commencement of the litigation until Quinn Emanuel's engagement in August 2016.   Cooley's hourly rates for this matter ranged from $382.50 per hour for a junior associate to $985.50 per hour for the lead partner.   Appendix B (Cooley Invoices).   These reflected an across-the-board 10% discount on Cooley's typical rates.   *See* Appendix B.   The total amount billed divided by total hours worked reflects an effective blended rate of **$393.20**.

The Cooley partners who worked on this matter charged an average rate of

---

Notice of Ruling on Quinn Defendants' Motion for Award of Attorneys' Fees, *Lockton v. O'Rourke*, Case No. BC361629 (Cal. Super. Ct. Feb. 23, 2011) (attaching Feb. 14 court order finding Quinn Emanuel's rates and total hours reasonable); Order Granting Plaintiff's and Plaintiffs in Intervention's Motions for Attorneys' Fees, *Monrovia Nursery Co. v. Rosedale*, Case No. BC351140 (Cal. Super. Ct. Jan. 12, 2009) (finding Quinn Emanuel's rates and total fees reasonable); Civil Minutes re: Order Granting Motion for Attorneys' Fees, *Riverside Cnty. Dept. of Mental Health v. A.S.*, Case No. 08-cv-00503-ABC (C.D. Cal. Feb. 22, 2010) (ECF No. 123) (awarding full amount of attorneys' fees sought for work performed by Quinn Emanuel); Final Award, *Academy of Television Arts & Sciences v. National Academy of Television Arts & Sciences, Am. Arbitration Assoc.*, Case No. 72 140 00247 07 JENF at ¶ 2.2 (May 19, 2008) (finding Quinn Emanuel's billable rates and hourly totals reasonable); Order Approving Interim Fee Requests Regarding Professionals, *In re Am. Home Mortgage Holdings, Inc.*, Case No. 07-11047, Dkt. 3695 (Bankr. D. Del. Apr. 14, 2008) (finding attorneys' fees requested by Quinn Emanuel were reasonable); Order Granting In Part Defendant Packaging Advantage Corp.'s Motion For An Award Of Attorneys' Fees And Costs, *Packaging Advantage Prop. Assocs., LLC v. Packaging Advantage Corp.*, Case No. VC045957 (Cal. Super. Ct. Nov. 6, 2007) (granting full amount of Quinn Emanuel's fee request); *Bistro Executive, Inc. v. Rewards Network, Inc.*, Case No. 04-cv-4640-CBM (C.D. Cal. Nov. 19, 2007) (ECF No. 357) (finding Quinn Emanuel's attorney rates and hours were reasonable).

$906.75 per hour.  Carlinsky Decl. ¶ 18; Appendix B.  These hourly rates were lower than the average partner billing rates at other top national firms, which as discussed above, frequently exceed $1,100.  2017 NLJ Billing Report at 9, 16, 18.  Similarly, the average $438.75 per hour rate charged by the associates on the Cooley team was lower than the $700-$900 per hour associate rates at comparable firms.  *Compare* Carlinsky Decl. ¶ 18 *with* at 9, 18.  Finally, as noted below, Defendants negotiated a significant reduction in Cooley's fees on this matter meaning that many hours were expended at no cost whatsoever.

### C.   Delaware Counsel's Rates

Morris Nichols acted as Delaware counsel for Defendants since August 2016.  Morris Nichols staffed this matter with only two attorneys: lead partner Kenneth J. Nachbar, one of the leading trial lawyers in Delaware (among other accolades, he has twice won *The Best Lawyers in America's* Lawyer of the Year award for bet-the-company litigation and *Chambers USA* has listed him in the top band for Delaware Court of Chancery every year since its inception), and senior associate Lauren Neal Bennett.

Mr. Nachbar's highest rate in this matter was $1,100 and Ms. Bennett's highest rate was $595.  Carlinsky Decl. ¶ 22; Appendix C.  Mr. Nachbar's rate is comparable to the rates of other prominent Delaware partners in 2017, and Ms. Bennett's rate is lower than the highest Delaware associate rates reported in 2017,

despite her seniority.   2017 NLJ Billing Report at 16.   Mr. Nachbar and Ms. Bennett's rates only modestly exceed the rates charged by senior partners and senior associates at Plaintiffs' Delaware counsel, Young Conaway Stargatt & Taylor, LLP. [6]   Most importantly, Mr. Nachbar and Ms. Bennett's skill and experience allowed them to manage all aspects of their role in this case with efficiency.   Together, Mr. Nachbar, Ms. Bennett, and *all of their staff* spent only 365 hours on this matter over *four years*, incurring a modest $257,589.07 – and much of that was to attend trial in February 2019.   Carlinsky Decl. ¶ 23 & Appendix C.

The fees charged by Potter Anderson and Parkowski, Guerke reflect effective blended rates of $448.66 and $587.14, respectively.   Carlinsky Decl. ¶¶ 27-28; Appendices D-E.   These rates are lower than average blended rates at comparable Delaware firms.   2017 NLJ Billing Report at 2-3, 15-16.   Especially given the efficiency with which these firms performed their respective roles – billing Defendants for less than 30 hours combined – their rates are reasonable. Carlinsky Decl. ¶¶ 27-28; Appendices D-E.

---

[6]   *See In re Hospital Acquisition LLC*, Case No. 19-10998-BLS, Dkt. 580 (Bankr. D. Del. Sept. 16, 2019) (Supplement to First Interim Fee Request of Young Conaway Stargatt & Taylor, LLP), at 5 (listing rates for lead partner at $975 and senior associates at $530 and $460).

IV.   **The Number of Hours Expended by Defendants' Attorneys Was Reasonable.**

The volume of hours expended in this matter—spanning more than five years—was reasonable given the size and complexity of the litigation, the amount at stake in the dispute, and Plaintiffs' aggressive litigation approach.  *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (citing "a strong presumption that the lodestar represents the reasonable fee."); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (explaining that "the novelty and complexity of a case" should be "reflected in the number of billable hours recorded by counsel").  Where counsel's time is "devoted generally to the litigation as a whole," the prevailing party may recover all attorneys' fees "related to the issues in this lawsuit" – even fees for unsuccessful motions and other proceedings.  *Liqwd, Inc. v. L'Oreal USA, Inc.*, 2019 WL 6840353, at *30-31 (D. Del. Dec. 16, 2019) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983)).

This case involved complex claims for securities fraud, common law fraud, and breach of contract; and required significant document and written discovery, taking 17 and defending 15 depositions (including taking 2 and defending 3 expert depositions), preparing and arguing a multitude of motions and other disputes raised with the Court, and, not least, preparing for and conducting a contentious trial.  *See* Carlinsky Decl. ¶¶ 4, 15.  Plaintiffs sought to recover $68,750,000 in damages, plus substantial attorneys' fees.  D.I. 190 at 53.  The effort spent on the

litigation is reflected in the public docket, which now has 466 entries.

Defendants' attorneys dedicated 11,966 hours over five years to this litigation, for which Defendants incurred a total of $10,141,326.66 in attorneys' fees, or around 15% of the amount in controversy.[7]  Carlinsky Decl. ¶¶ 14, 20, 24, 27-28; Appendices A-E.

For comparison, a 2019 study of fee awards in securities class actions[8] found that attorneys devoted about 11,000 hours on average to cases that settled for around $40 million.  *See* New York University School of Law, "Working Hard or Making Work?  Plaintiffs' Attorneys Fees in Securities Fraud Class Actions" (2019) at 44, Table 2.  Such cases resulted in an average fee award of $9.7 million (24% of the total settlement), for an implied hourly fee of **$864**.  *Id.*  In other words, the hours Defendants expended through trial in this matter are comparable to the hours, hourly rate, relative cost, and overall cost typically expended to ***settle*** a securities class action worth only two-thirds as much.

Indeed, courts have awarded nearly ***twice*** as much in fees as Defendants

---

[7]  Notably, demonstrating how Defendants closely managed the attorney time and expense spent on this matter to ensure it was reasonable, Cooley attorneys spent more than 750 hours incurring over $400,000 in fees and expenses associated with defending this suit.  However, Defendants negotiated a significant reduction of Cooley's fees (reducing total fees and expenses by more than one-half), now to the benefit of Plaintiffs since Defendants only seek recovery of the reduced amount of $148,434.31 which they negotiated to pay.

[8]  Securities class actions involve comparable issues, and more importantly are one of the few types of litigation for which hour and fee information is regularly available, since plaintiffs' fees typically must be approved by the Court.

seek here for cases in the same range.  *See* NERA Economic Consulting, "Recent Trends in Securities Class Action Litigation:  2017 Full-Year Review" (2018), at 34, Table 1 (reporting fee awards of $17.3 million, $19.1 million, and $25.4 million on settlements ranging from $56 million to $74 million).  Cases in other areas of law require similar resources for similar amounts in controversy.  *See* American Intellectual Property Law Association, Report of the Economic Survey (2019) at I-145 (finding that patent cases with over $25 million in controversy – around a third of the amount in controversy here – can cost $11.4 million through appeal), I-220 (finding that trade secret cases with over $25 million in controversy can cost $8 million through appeal).

Thus, the number of hours Defendants have expended, and the total fees they have incurred, are comparable to (or less than) similar litigation.  Especially given the complexity of this litigation, and the result obtained, Defendants' total fees are reasonable.

## CONCLUSION

For the foregoing reasons, the Court should award Defendants their reasonable attorneys' fees and disbursements in the amount of $10,141,326.66.[9]

---

[9]   Defendants intend to file their bill of costs, including expert costs, within 14 days after the time for appeal has expired, consistent with Local Rule 54.1(a)(1).

Dated:        February 12, 2020

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP

*/s/ Kenneth J. Nachbar*

Kenneth J. Nachbar (#2067)
Lauren Neal Bennett (#5940)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
knachbar@mnat.com
lbennett@mnat.com

*Attorneys for Defendants C3,
Inc., Thomas Siebel and David
Schmaier*

OF COUNSEL:

Michael B. Carlinsky
Edward J. DeFranco
Joseph Milowic III
John H. Chun
Jesse Bernstein
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
eddefranco@quinnemanuel.com
josephmilowic@quinnemanuel.com
johnchun@quinnemanuel.com
jessebernstein@quinnemanuel.com

Kevin P.B. Johnson
Michael T. Lifrak
David E. Myre
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA  94065
(650) 801-5000
kevinjohnson@quinnemanuel.com
michaellifrak@quinnemanuel.com
davidmyre@quinnemanuel.com