## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ERIC BLATTMAN, individually and as an assignee of certain former members of E2.0 LLC, LAMB FAMILY LLC, and DAVID STAUDINGER, | ) ) ) ) | |
| Plaintiffs/Counterclaim Plaintiffs | ) ) | |
| | ) | C.A. No. 1:15-cv-00530-CFC |
| v. | ) | |
| | ) | **CONSOLIDATED** |
| THOMAS M. SIEBEL, DAVID SCHMAIER, JOHN DOE 1, AND JANE DOE 2, | ) ) ) | **PUBLIC VERSION** |
| | ) | |
| Defendants, | ) | |
| | ) | |
| C3, INC. d/b/a C3 IoT, | ) | |
| | ) | |
| Defendant/Counterclaim Defendant. | ) ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR RENEWED MOTION FOR ATTORNEYS' FEES

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Kenneth J. Nachbar (#2067)
Lauren K. Neal (#5940)
1201 North Market Street
Wilmington, DE  19801
(302) 658-9200
knachbar@morrisnichols.com
lneal@morrisnichols.com
*Attorneys for Defendants*

i

OF COUNSEL:

Michael B. Carlinsky
David E. Myre
Jesse Bernstein
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
davidmyre@quinnemanuel.com
jessebernstein@quinnemanuel.com

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
kevinjohnson@quinnemanuel.com

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................1

FACTUAL BACKGROUND................................................................................4

I.      Plaintiffs' Aggressive Litigation Of Their Meritless Claims .......................4

II.     The District Court's Judgment For Defendants.............................................6

III.    The Third Circuit's Affirmative Of The District Court's Judgment..............8

IV.     The Appointment Of The Special Master To Determine Fees.......................8

V.      The Fees Sought by Defendants ....................................................................9

ARGUMENT ......................................................................................................9

I.      Applicable Legal Standard ............................................................................9

II.     The Number of Hours Expended by Defendants' Attorneys Was
        Reasonable.................................................................................................11

III.    Defendants' Attorneys' Rates Are Reasonable ...........................................14

        A.      Quinn Emanuel's Rates....................................................................15

        B.      Cooley's Rates.................................................................................17

        C.      Delaware Counsel's Rates................................................................17

IV.     The Remaining Complaints Plaintiffs Have Advanced In Prior
        Briefing Lack Merit....................................................................................18

CONCLUSION ..................................................................................................21

# TABLE OF AUTHORITIES

**Page**

## Cases

*Blattman et al. v. Siebel et al.*,
  Case No. 20-01417, D.I. 45 (3d Cir., Feb. 17, 2021) ...........................................2

*Boeing Co. v. Spirit Aerosystems, Inc.*,
  2017 WL 6021423 (Del. Super. Ct. Dec. 5, 2017) ............................................10

*Coalition to Save our Children v. State Bd. of Educ. of the State of
  Delaware*, 143 F.R.D. 61 (D. Del. 1992) ..................................................... 10, 13

*Cohen v. Brown Univ.*,
  No. CA 92–197 L, 1999 WL 695235 (D.R.I. May 19, 1999) ...........................11

*Danenberg v. Fitracks, Inc.*,
  58 A.3d 991 (Del. Ch. 2012) ...................................................................... 10, 20

*Greenstar, LLC v. Heller*,
  934 F. Supp. 2d 672 (D. Del. 2013) ..................................................................19

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ..........................................................................................11

*In re Am. Home Mortgage Holdings, Inc.*,
  Case No. 07-11047, Dkt. 3695 (Bankr. D. Del. Apr. 14, 2008) .......................17

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
  426 F.3d 694 (3d Cir. 2005) ..............................................................................14

*Kademani v. Mayo Clinic*,
  2012 WL 6014775 (D. Minn. Dec. 3, 2012) .....................................................10

*Kattan ex rel. Kattan v. District of Columbia*,
  995 F.2d 274 (D.C. Cir. 1993) ...........................................................................14

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
  2019 WL 6840353 (D. Del. Dec. 16, 2019) ............................................... 11, 16

*Lockton v. O'Rourke*,
  Case No. BC361629 (Cal. Super. Ct. Feb. 23, 2011) ......................................16

*Monrovia Nursery Co. v. Rosedale*,
  Case No. BC351140 (Cal. Super. Ct.  Jan. 12, 2009) ......................................16

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stauffer Chem. Co.*,
  1990 WL 177644 (Del. Super. Ct. Oct. 23, 1990) ............................................20

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010).................................................................... 11, 14

*Riverside Cnty. Dept. of Mental Health v. A.S.*, Case No. 08-cv-00503-ABC
  (C.D. Cal. Feb. 22, 2010).....................................................................17

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
  254 F. Supp. 3d 680 (D. Del. 2017) ......................................................15

*Transweb, LLC v. 3M Innovative Props. Co.*,
  No. 10-cv-04413-FSH (D.N.J. Sept. 24, 2013) .................................16

*U.S. ex rel. Raggio v. Seabord Marine Ltd.*,
  2017 WL 2591288 (D.D.C. May 4, 2017).............................................21

## <u>Other Authorities</u>

American Intellectual Property Law Association, Report of the Economic
  Survey (2019) .....................................................................................14

National Law Journal, ALM Legal Intelligence, NLJ Billing Report (2017) .........16

NERA Economic Consulting, "Recent Trends in Securities Class Action
  Litigation:  2017 Full-Year Review" (2018) ......................................13

New York University School of Law, "Working Hard or Making
  Work?  Plaintiffs' Attorneys Fees in Securities Fraud Class Actions"
  (2019)...................................................................................................13

## **INTRODUCTION**

This action involved extremely serious but unsubstantiated, and ultimately disproven, allegations by lead-plaintiff Eric Blattman and other former E2.0 unitholders ("Plaintiffs") who, *for more than six years*, falsely accused defendants C3.ai, Thomas Siebel, and David Schmaier ("Defendants") of federal securities fraud, Delaware common law fraud, crime-fraud, and breach of a merger agreement between Efficiency 2.0 ("E2.0") and C3. The significance of these allegations to the Defendants, their reputations, and their livelihood and future prospects cannot be overstated. Allegations of fraud, even if false and unproven, cast a cloud of uncertainty over the accused. For a (now-successful) start-up like C3, allegations of fraud can impact fundraising and market perception to the detriment of company shareholders. For notable business people like Messrs. Siebel and Schmaier, in addition to causing enormous damage to the shareholders of the companies they run, the consequences are potentially career ending. As a result of the severity of the allegations and their potential consequences, it was an absolute necessity—and fiduciary obligation of Mr. Siebel in his role as CEO of C3—that Messrs. Siebel and Schmaier mount a thorough and rigorous defense.

As a result of Defendants' legal defense efforts, Plaintiffs' allegations were consistently rejected throughout this case. Plaintiffs' suit was transferred in June 2015, after a court rejected their "specious argument" that the case belonged in

New York rather than Delaware (D.I. 45, at 2); the allegations of crime-fraud were rejected after extensive briefing and an *in camera* inspection of the documents at issue in December 2017 (D.I. 304, at 1); Plaintiffs' sole damages expert was excluded pre-trial in February 2019 (*see* D.I. 362); and following a seven-day bench trial, the District Court rejected each and every one of Plaintiffs' claims in January 2020.  (D.I. 376, at 51.)  In doing so, the District Court repeatedly found that Plaintiffs <u>provided testimony that "lacked credibility.</u>"  (D.I. 376, at 11; *see also id.* at 21 ("I give no credit to [Plaintiffs' witness Andy] Frank's trial testimony"); *id.* at 22 ("I similarly will disregard Blattman's testimony"); *id.* at 31 (the District Court "did not find" Blattman to be a "credible witness").)

Plaintiffs nevertheless pressed forward for <u>six years</u>, necessitating the continued expenditure of time and expense by Defendants to disprove the meritless, but serious, allegations of fraud and deliberate misconduct levied against them.  In February 2021, the Third Circuit "affirm[ed] the judgment and orders of the District Court." *Blattman et al. v. Siebel et al.*, Case No. 20-01417 ("3d Cir. Opinion"), D.I. 45, at 13 (3d Cir., Feb. 17, 2021).  Given this conclusive rejection of their claims, Plaintiffs are indisputably responsible for reimbursing Defendants for "their reasonable attorneys' fees, costs, and disbursements" under the parties' Merger Agreement.  (D.I. 376, at 51; 3d Cir. Opinion, at 13.)

True to form, Plaintiffs sought to avoid this obligation by presenting

misleading and inaccurate arguments.  When Defendants moved for fees following the District Court's judgment, Plaintiffs characterized the number of firms and attorneys employed by Defendants, and the time they spent and fees incurred, as "completely out of proportion to the demands of this case," calling them "excessive, redundant, or otherwise unnecessary."  (D.I. 387, at 1, 13-14.)  At the same time, Plaintiffs *refused* to provide any information regarding the number of firms *they* hired, the attorneys *they* employed, or the time *they and their lawyers* spent on this lawsuit.

The evidence has again exposed Plaintiffs' lack of integrity and efforts to mislead the court.  On April 30, 2021, against Plaintiffs' objection (D.I. 414, at 3-4), the District Court ordered Plaintiffs to produce invoices from their own counsel.  (D.I. 416, at ¶2.)  When this information was provided on May 10, 2021, it was immediately apparent why Plaintiffs had resisted its production—it conclusively disproves Plaintiffs' statements.  For example:

| Plaintiffs' Inaccurate Assertion | Defendants | Plaintiffs[1] |
|---|---|---|
| **Defendants hired too many law firms.** (D.I. 387, at 15.) | 5 law firms | 5 law firms |
| **Defendants used too many attorneys.** (D.I. 387, at 15-17.) | 23 attorney timekeepers | 26 attorney timekeepers |
| **Defendants' attorneys spent too much time on the case.**  (D.I. 387, at 13-14; D.I. | ~12,600 attorney hours | ~13,700 attorney hours |

---

[1]   The May 17, 2021 Declaration of David E. Myre in Support of Defendants' Opening Brief in Support of Their Renewed Motion for Attorneys' Fees (the "Myre Fees Decl."), filed herewith, includes highlighted excerpts of the invoices from Plaintiffs' counsel and an appendix summarizing the same.

| 408, at 3.) | | |
|---|---|---|
| **Delaware rates should be used to determine reasonable fees**. (D.I. 387, at 19.) | Relied primarily on national counsel | W&C (national counsel) accounted for over 80% of the hours for Plaintiff |
| **A blended rate of ~$870 / hour for Defendants' national counsel (QE) is unreasonable.** (D.I. 387, at 19.) | $871 / hour blended rate for QE | Rates from $420 to $1,200 / hour for W&C |
| **Defendants' fees are "completely out of proportion to the demands of this case."** (D.I. 387, at 1; D.I. 408, at 1.) | ~$10.7 million | ~$8.8 million |

This demonstrates the hypocrisy of Plaintiffs' protests. It also establishes the reasonableness of Defendants' fees incurred due to Plaintiffs' reckless and greedy decision to pursue claims with the hope of forcing Messrs. Siebel and Schmaier to settle, rather than risk a career-ending outcome. Defendants' fees are therefore recoverable under the Merger Agreement and Delaware law, and for the final time Plaintiffs should be held accountable for their actions and lack of credibility. Defendants respectfully request that the Special Master recommend an Order awarding Defendants $10,713,703.42 in fees and expenses incurred in defending against Plaintiffs' meritless lawsuit.

## FACTUAL BACKGROUND

### I.      Plaintiffs' Aggressive Litigation Of Their Meritless Claims

Lead-plaintiff Mr. Blattman is a former investment banker and hedge-fund founder with a long career on Wall Street. (D.I. 376, at 3.) He was the catalyst for

and driving force behind the lawsuit, and had a contract with other plaintiffs to receive an out-sized portion of any settlement or verdict.  (Trial Tr. 1642:22-1643:22.)  Mr. Blattman and other former E2.0 unitholders brought this action on October 28, 2014, and asserted claims for securities fraud, common law fraud, and breach of contract.  (D.I. 1, 190.)  Before this case was filed, when Plaintiffs first threatened suit, Defendants described the baseless nature of Plaintiffs' claims and, in an attempt to persuade Plaintiffs to stand down, repeatedly warned that, if Plaintiffs proceeded, "they would have to pay C3's legal fees." (Trial Tr. 2494:13-15.)

      Despite these written warnings, Mr. Blattman proceeded to assist in drafting a complaint, obtained assignments from other E2.0 Unitholders to bring claims on their behalf, and then approved the filing of this action.  (Trial Tr. 1642:22-1643:22.)  Mr. Blattman's incentive in doing so is clear:  he wanted to unjustly enrich himself, under the terms of the assignments he negotiated, as he stood to gain an additional 10% of any recovery from Defendants in this lawsuit (after deducting attorneys' fees).  (*Id.*)

      The parties litigated this case heavily for over the next six years, engaging in significant document and written discovery, and arguing a multitude of motions and other disputes in this Court.  (D.I. 381 ("Carlinsky Decl."), ¶¶ 4, 15.)  Among the many disputes were a number of unnecessary and failed motions brought by

Plaintiffs.  (*E.g.,* D.I. 293.)  One of the most reckless motions was an ill-conceived and ultimately baseless attempt to level crime-fraud allegations against Mr. Siebel, in an effort to invade Defendants' privileged communications.  (*See* D.I. 291.) That motion, asserted without regard for the impact it could have on Mr. Siebel's illustrious career and the C3 shareholders who relied on him as the steward of the company, is emblematic of Plaintiffs' scorched-earth approach to the litigation, including their efforts to try to force a settlement by creating improper downside risks for Defendants.  It was definitively rejected.  (*See* D.I. 304.)

Given Plaintiffs' approach, Defendants had to take 15 fact depositions and 2 expert depositions, and defend 12 fact depositions and 3 expert depositions. (Carlinsky Decl. ¶ 4.)  The parties also exchanged over <u>a half million pages</u> of documents.  (*Id.*)  Prior to trial, Defendants repeatedly highlighted the dispositive flaws in Plaintiffs' case, seeking to avoid further time and expenses incurred on this action by both the parties and the Court.  (*E.g.*, Trial Tr. 2494:7-15; D.I. 193; D.I. 314; D.I. 337.)  Nevertheless, Plaintiffs pressed through trial, significantly increasing Defendants fees at each stage of the litigation.

## II.   <u>The District Court's Judgment For Defendants</u>

The District Court's Memorandum Opinion provides a comprehensive summary of the claims and allegations raised by Plaintiffs, and the evidence and factual findings made by the District Court ***rejecting each and every one of those***

*claims* following a seven-day bench trial in February 2019.  (D.I. 376, at 51.)  The District Court recognized that without the merger, E2.0 was set to "run out of cash by the end of February 2012, and thus Blattman deemed the company's capital position to be 'problematic' going into 2012."  (*Id.* at 4.)  It found that, in light of this, for Mr. Blattman and the other Plaintiffs their motivations were transparent: "[t]he entire thesis of [a merger] was to get stock early on in ... Siebel's next multibillion dollar company."  (*Id.* at 8.)

The Court then found that it was "evident from the credible testimony of Siebel, Schmaier, and [former E2.0 CEO Thomas] Scaramellino and from the emails and internal memoranda contemporaneous with the merger negotiations that C3 was honest and forthcoming in its dealings with E2.0."  (D.I. 376, at 44-45.)  By contrast, the Court repeatedly found that Plaintiffs' witness testimony was ***not*** credible given the "demeanor" of the witnesses and the fact that their testimony was "contradicted" by other credible evidence.  (*See, e.g.*, *id.* at 11, 21, 31.)  As for Mr. Blattman, the lead Plaintiff who claimed to have been lied to during the merger negotiations, he was utterly discredited at trial.  (*Id.* at 11 ("I [] will disregard Blattman's testimony"); *id.*at 31 (the District Court "did not find" Blattman to be a "credible witness").)

After "find[ing] in favor of Defendants on all claims for relief" alleged by Plaintiffs, the Court appropriately found that Defendants are entitled to their fees

and costs under Section 7.3 of the Merger Agreement.  (D.I. 376, at 51.)

### III.   <u>The Third Circuit's Affirmation Of The District Court's Judgment</u>

After losing every claim at trial, Plaintiffs still forced C3 to continue litigating.  Plaintiffs sought to overturn the District Court's findings with respect to a single breach of contract claim against C3, claiming that this would exonerate them from their liability to pay Defendants' attorneys' fees.  Plaintiffs even made a last-ditch effort to seek "nominal damages" of $1 for its claim to avoid paying such fees, but the Third Circuit rejected each of Plaintiffs' arguments and affirmed the District Court's order, including the award of reasonable attorneys' fees and expenses.  (3d Cir. Opinion, at 13.)

### IV.   <u>The Appointment Of The Special Master To Determine Fees</u>

On March 25, 2021, the District Court recommended the appointment of a Special Master to determine the fees owed to Defendants.  The District Court noted:  "It occurs to me that any assessment of the reasonableness of Defendants' fees should involve a consideration of the amount of fees Plaintiffs incurred in litigation this case."  (D.I. 413, at 2.)  Despite this, Plaintiffs remained steadfast in their refusal to disclose their own fees.  (D.I. 414, at 3-4.)

The District Court overruled Plaintiffs' objection on April 30, 2021, ordering Plaintiffs to produce their attorneys' fees and expenses spent in connection with their unsuccessful lawsuit.  (D.I. 416, at ¶2.)  The District Court

also appointed the Honorable Sue L. Robinson as Special Master to provide a

report and recommendation on this motion.  (*Id.*, ¶1.)

Plaintiffs produced the required invoices on May 10, 2021, which as

described below confirm the reasonableness of Defendants' fees.

## V.  The Fees Sought by Defendants

As set forth in the cited declarations supporting this request, Defendants

seek recovery of the following fees and disbursements:

| Firm | Atty Hours | Fees/ Disbursements |
|------|------------|---------------------|
| Quinn Emanuel (Lead Counsel) | 11,772.7 | $10,259,955.54 |
| Cooley LLP (Prior Lead Counsel) | 377.5 | $148,434.31 |
| Morris, Nichols, Arsht & Tunnell, LLP (Delaware Counsel) | 450.5 | $293,102.35 |
| Potter Anderson & Corroon, LLP (Prior Delaware Counsel) | 26.3 | $11,799.73 |
| Parkowski, Guerke & Swayze, P.A. (Conflicts Counsel) | 0.7 | $411.50 |
| **TOTAL** | 12,627.9 | $10,713,703.42 |

## ARGUMENT

## I.  Applicable Legal Standard

In cases involving fee-shifting provisions such as Section 7.3 of the

applicable Merger Agreement, "[d]etermining reasonableness of amounts sought []

does not require the Court to assess independently whether counsel appropriately

pursued and charged for a particular  motion, line of argument, area of discovery,

or other litigation tactic." *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997 (Del. Ch.

2012) (citations omitted).  Rather, a party seeking its fees carries its burden "by

showing that the services that [were] rendered were thought prudent and appropriate in the good faith professional judgment of competent counsel." *Id*. at 1000.  Once such a showing is made, Delaware courts have warned that "[f]or a Court to second-guess, on a hindsight basis, an attorney's judgment ... is hazardous and should whenever possible be avoided." *Id*. at 997; *Boeing Co. v. Spirit Aerosystems, Inc.*, 2017 WL 6021423, at *3 (Del. Super. Ct. Dec. 5, 2017).

Moreover, "[m]any courts have held that a non-prevailing party's attorneys' fees are relevant to the reasonableness of a prevailing party's attorneys' fees." *Kademani v. Mayo Clinic*, 2012 WL 6014775, at *1 (D. Minn. Dec. 3, 2012); *see, e.g., Coalition to Save our Children v. State Bd. of Educ. of the State of Delaware*, 143 F.R.D. 61, 64-66 (D. Del. 1992) (ordering production of "(1) defendant's (attorneys and paralegals) time spent defending plaintiff's claims; (2) billing rates; (3) total fees; (4) defendant's out-of-pocket expenses; (5) information as to the number of hours that each attorney spent on each issue or area relating to this case which is being challenged by defendant; and (6) total of [defendant's] attorneys' time spent conferring with each other on the issues litigated in this case," because it is helpful in responding to defendants' allegations that plaintiff's attorneys' fees are not "reasonable"); *see also Cohen v. Brown Univ.*, No. CA 92–197 L, 1999 WL 695235, at *1, 6 (D.R.I. May 19, 1999) ("Knowing how many hours Defendants' attorneys devoted to that same task may assist the court in determining whether

[plaintiff's] hours were reasonable.").  Accordingly where, as here, Plaintiffs challenge the reasonableness of Defendants' fees incurred, an assessment of the time spent and fees incurred by Plaintiffs' own counsel is instructive.  *See id.*

## II.    The Number of Hours Expended by Defendants' Attorneys Was Reasonable.

The volume of hours expended in this matter—spanning more than six years—was reasonable given the size and complexity of the litigation, the amount of money at stake, Plaintiffs' aggressive litigation approach, and the extremely grave consequences to Defendants of failing to mount the required defense.  *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) ("the novelty and complexity of a case" should be "reflected in the number of billable hours recorded by counsel").  Further, where counsel's time is "devoted generally to the litigation as a whole," the prevailing party may recover ***all*** attorneys' fees "related to the issues in this lawsuit"—even fees for unsuccessful motions and other proceedings. *Liqwd, Inc. v. L'Oreal USA, Inc.*, 2019 WL 6840353, at *14-15 (D. Del. Dec. 16, 2019) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983)).

This case involved complex claims for securities fraud, common law fraud, crime-fraud, and breach of contract.  The fraud claims were tied to C3 accounting issues and required detailed analysis of internal financial information.  The defense also focused on the state of Plaintiffs' company, E2.0, and its financial distress. The case required significant document and written discovery, with Defendants

taking 17 and defending 15 depositions (including taking 2 and defending 3 expert depositions), preparing and arguing a multitude of motions and other disputes raised with the Court, and, not least, preparing for and conducting a contentious trial and defending the trial victory on appeal. (*See* Carlinsky Decl. ¶¶ 4, 15.) Plaintiffs sought significant damages, alleging a right to recover $68,750,000 plus substantial attorneys' fees. (D.I. 190, at 53.) The effort spent on the litigation is reflected in the public docket, which now has 508 entries.

Defendants' attorneys dedicated 12,627.9 hours over six years to this litigation, for which Defendants incurred a total of $10,713,703.42 in attorneys' fees and related expenses, or around 16% of the amount in controversy.[2] (Carlinsky Decl. ¶¶ 14, 20, 24, 27-28, Appendices A-E; D.I. 403 ("Myre Decl.") ¶ 15.) This number of hours expended by Defendants' counsel is ***1,000 hours less than the amount of time spent by Plaintiffs' attorneys*** in addressing the identical set of claims and issues, (*see* Myre Fees Decl., Appendix A), which itself confirms that the number of hours expended by Defendants' counsel was reasonable. *E.g.,*

---

[2]   Notably, demonstrating how Defendants closely managed the attorney time and expense spent on this matter to ensure it was reasonable, Cooley attorneys spent more than 750 hours incurring over $400,000 in fees and expenses associated with defending this suit. However, Defendants, without prompting from either the Court or Plaintiffs, negotiated a significant reduction of Cooley's fees (reducing total fees and expenses by more than one-half), now to the benefit of Plaintiffs, since Defendants only seek recovery of the reduced amount of $148,434.31.

*Coalition to Save our Children*, 143 F.R.D. at 64-66.

Empirical data supports this same conclusion.  For example, a 2019 study of fee awards in securities class actions[3] found that attorneys devoted about 11,000 hours on average to cases that settled for around $40 million.  *See* New York University School of Law, "Working Hard or Making Work?  Plaintiffs' Attorneys Fees in Securities Fraud Class Actions" (2019) at 44, Table 2.  Such cases resulted in an average fee award of $9.7 million (24% of the total settlement), for an implied hourly fee of $864.  *Id.*  In other words, the hours Defendants expended through trial in this matter are comparable to the hours, hourly rate, relative cost, and overall cost typically expended to ***settle*** a securities class action worth only two-thirds as much.

Indeed, courts have awarded nearly ***twice*** as much in fees as Defendants seek here for cases in the same range.  *See* NERA Economic Consulting, "Recent Trends in Securities Class Action Litigation:  2017 Full-Year Review" (2018), at 34, Table 1 (reporting fee awards of $17.3 million, $19.1 million, and $25.4 million on settlements ranging from $56 million to $74 million).  Cases in other areas of law require similar resources for similar amounts in controversy.  *See* American Intellectual Property Law Association, Report of the Economic Survey

---

[3]   Securities class actions involve comparable issues, and are one of the few types of litigation for which hour and fee information is regularly available, since plaintiffs' fees typically must be approved by the Court.

(2019) at I-145 (finding that patent cases with over $25 million in controversy—around a third of the amount in controversy here—can cost $11.4 million through appeal), I-220 (finding that trade secret cases with over $25 million in controversy can cost $8 million through appeal).  Thus, the number of hours Defendants have expended, and fees incurred, are comparable to (or less than) similar litigation, and the hours incurred are in fact are *less than* Plaintiffs spent on this case.  Especially given the complexity of this litigation, and the result obtained, the time spent by Defendants' counsel is reasonable.

### III.   <u>Defendants' Attorneys' Rates Are Reasonable</u>

The rates charged by each firm retained by Defendants was reasonable given the quality and expertise of each firm, and in light of prevailing market rates charged by similar firms, the applicable standard in this circuit.  *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 708 (3d Cir. 2005), as amended (Nov. 10, 2005).  Indeed, "an attorney's usual billing rate" is presumed to be "the reasonable rate, provided that this rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Kattan ex rel. Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).  Defendants' counsel charged their usual billing rate and, more often than not, ***significantly discounted rates*** for their services to Defendants.  The

14

rates charged to Defendants are reasonable for the following reasons:

**A.     <u>Quinn Emanuel's Rates</u>**

Quinn Emanuel acted as lead counsel for Defendants.  Quinn Emanuel's

hourly rates ranged from $370 per hour for a law clerk to $1,395 per hour for the

lead partner.  (Carlinsky Decl., Appendix A; Myre Decl., ¶ 8.)  These reflect an

across-the-board 10% discount on Quinn Emanuel's typical rates.  (Myre Decl.,

¶ 7-8.) The total amount billed divided by total hours worked reflects an effective

blended rate of **<u>$871.50</u>**.

Quinn Emanuel's rates are in line with the those of Plaintiffs' lead national

counsel, Williams & Connolly.  For example, a review of Williams & Connolly's

invoices shows that the rates for their attorneys ranged from approximately $365

for law clerks to $1,200 for lead trial counsel.  (Myre Fees Decl., at Ex. A.)  This

data confirms the reasonableness of Defendants' fees.  *Cf. SRI Int'l, Inc. v. Cisco

Sys., Inc.*, 254 F. Supp. 3d 680, 723 n.58 (D. Del. 2017).

The rates charged by Quinn Emanuel partners—which averaged $1,056 an

hour in 2019 (the year of the trial) (Carlinsky Decl. ¶ 7), are in fact ***lower*** than

average partner billing rates at other top national firms.  For example, according to

a 2017 ALM Billing Report, the average hourly rate for a partner ***in 2017*** (three

years ago) was $1,135 per hour at Sidley Austin, $1,115 per hour at Kirkland &

Ellis, and $1,320 per hour at Paul, Weiss.  National Law Journal, ALM Legal

Intelligence, NLJ Billing Report (2017) ("2017 NLJ Billing Report") at 9, 16, 18.

Further, the vast majority of the work in this case was performed by partners

billing *below* the average rate: 2,296.7 partner hours billed at rates below $1,056

compared to 1,024.3 hours billed at rates above the average.

Similarly, the average $678.38 per hour rate charged by the associates on the

Quinn Emanuel team as of 2019 is lower than associate rates at comparable firms:

$735 per hour at Kirkland & Ellis and $995 per hour at Paul, Weiss (again, *in*

*2017*) at 9, 18.[4]  (*Compare* Carlinsky Decl. ¶ 7 *with* 2017 NLJ Billing Report.)

Finally, courts have regularly found Quinn Emanuel's rates to be reasonable.

Recently, this Court awarded Quinn Emanuel's client over $11 million in fees,

where the "fees charged for the core attorneys range from their highest hourly rates

of $705.00 to $1,040." *Liqwd*, 2019 WL 6840353, at *12.[5]  Accordingly, the rates

for Plaintiffs' national counsel, empirical studies, and prior case law all confirm

---

[4]   Sidley Austin's associate rates are not reported on the 2017 NLJ Billing Survey.
[5]   *See also* Report and Recommendation of Special Master, *Transweb, LLC v. 3M Innovative Props. Co.*, No. 10-cv-04413-FSH (D.N.J. Sept. 24, 2013) (ECF No. 567) (ruling finding Quinn Emanuel's total fees of $26,146,493.45 were reasonable); Notice of Ruling on Quinn Defendants' Motion for Award of Attorneys' Fees, *Lockton v. O'Rourke*, Case No. BC361629 (Cal. Super. Ct. Feb. 23, 2011); Order Granting Plaintiff's and Plaintiffs in Intervention's Motions for Attorneys' Fees, *Monrovia Nursery Co. v. Rosedale*, Case No. BC351140 (Cal. Super. Ct.  Jan. 12, 2009); Civil Minutes re: Order Granting Motion for Attorneys' Fees, *Riverside Cnty. Dept. of Mental Health v. A.S.*, Case No. 08-cv-00503-ABC (C.D. Cal. Feb. 22, 2010) (ECF No. 123); Order Approving Interim Fee Requests Regarding Professionals, *In re Am. Home Mortgage Holdings, Inc.*, Case No. 07-11047, Dkt. 3695 (Bankr. D. Del. Apr. 14, 2008).

the reasonableness of Quinn Emanuel's rates in this case.

### B.   Cooley's Rates

Cooley acted as lead national counsel for Defendants from commencement of the litigation until Quinn Emanuel's engagement in August 2016.  Cooley's hourly rates for this matter ranged from $382.50 per hour for a junior associate to $985.50 per hour for the lead partner.  (Carlinsky Decl., Appendix B.)  These reflected an across-the-board 10% discount on Cooley's typical rates.  (*See id.,* ¶ 18, Appendix B.)  The total amount billed divided by total hours worked reflects an effective blended rate of **$393.20**.

The Cooley partners who worked on this matter charged an average rate of $906.75 per hour.  (*Id.*)  These hourly rates were lower than the average partner billing rates at other top national firms, which as discussed above, frequently exceed $1,100.  2017 NLJ Billing Report at 9, 16, 18.  Finally, as noted below, Defendants negotiated a significant reduction in Cooley's fees on this matter meaning that many hours were expended at no cost whatsoever.

### C.   Delaware Counsel's Rates

Morris Nichols has acted as Delaware counsel for Defendants since August 2016.  Morris Nichols staffed this matter with only two attorneys: partner Kenneth J. Nachbar, one of the leading trial lawyers in Delaware, and senior associate Lauren K. Neal.  Mr. Nachbar's highest rate in this matter was $1,150 and Ms.

Neal's highest rate was $640.  (Myre Fees Decl., Appendix B.)  Mr. Nachbar's rate is comparable to the rates of other prominent Delaware partners in 2017, and Ms. Neal's rate is lower than the highest Delaware associate rates reported in 2017, despite her seniority.  2017 NLJ Billing Report at 16.  Mr. Nachbar and Ms. Neal's skill and experience also allowed them to manage all aspects of their role in this case with efficiency.  Together, Mr. Nachbar, Ms. Neal, and ***all of their staff*** spent only approximately 450 hours on this matter over six years, incurring a modest $293,102.35—and much of that was to attend trial.  (Carlinsky Decl. ¶ 24 & Appendix C; Myre Decl. ¶ 19 & Appendix B.)

The fees charged by Potter Anderson and Parkowski, Guerke reflect effective blended rates of $448.66 and $587.14, respectively.  (Carlinsky Decl. ¶¶ 27-28, Appendices D-E.)  These rates are lower than average blended rates at comparable Delaware firms.  2017 NLJ Billing Report at 2-3, 15-16.  Especially given the efficiency with which these firms performed their respective roles— billing Defendants for less than 30 hours combined—their rates are reasonable. (Carlinsky Decl. ¶¶ 27-28, Appendices D-E.)

## IV.   **The Remaining Arguments Plaintiffs Have Advanced In Prior Briefing Lack Merit**

In addition to their complaints about the hours spent and rates incurred by Defendants' counsel—since proven to be disingenuous following the District Court's requirement that Plaintiffs disclose this information for their own

attorneys—the other arguments that Plaintiffs have raised in past briefing before the District Court are similarly without merit.

For example, Plaintiffs have argued that Defendants seek to recover fees for "unnecessary legal expenditures" (D.I. 408, at 3), such as fees related to Defendants' motion for bond (*id*. at 6-7), fraud and contract claims brought by Defendants (D.I. 387, at 8-9), the holdback claim that Defendants prevailed on (*id*. at 10-11), and services provided to the former E2.0 CEO.  (*Id*. at 11-12.)  But Delaware law does not permit such parsing of tasks as Plaintiffs seek to do—to the contrary, "[a]bsent any qualifying language that fees are to be awarded claim-by-claim or on some other partial basis," courts apply contractual fee-shifting provisions "in an all-or-nothing manner."  *Greenstar, LLC v. Heller*, 934 F. Supp. 2d 672, 697 (D. Del. 2013); *see* D.I. 392 at 4-7.  As per the terms of Section 7.3 of the Merger Agreement, which Plaintiff negotiated and signed, Defendants are entitled to recover ***all*** reasonable fees they incurred.  And this Court should not "second-guess, on a hindsight basis, an attorney's judgment" in pursuing such courses of action, particularly where (as here) the strategic decisions made by Defendants' counsel led to the complete rejection of all Plaintiffs' claims. *Danenberg*, 58 A.3d at 997.

Similarly, Plaintiffs previously argued that Defendants should not be entitled to recover fees spent in representing former C3 employees during depositions in

discovery.  (*See* D.I. 387 at 14.)  But once again, Plaintiffs May 10, 2021

production confirms that ***Plaintiffs' counsel did exactly the same thing***.  (*E.g.*

Myre Fess Decl. Ex. A, at bates 666 (discussing Plaintiffs' counsel's representation

of prior E2.0 employees such as Andy Frank and Zeke Hausfather.)  Courts have

confirmed that this is a common and appropriate practice, and Plaintiffs therefore

cannot raise any credible issue with their obligation to reimburse Defendants for

fees incurred in this manner.  *E.g. Nat'l Union Fire Ins. Co. of Pittsburgh, PA v.*

*Stauffer Chem. Co*., 1990 WL 177644, at *2 (Del. Super. Ct. Oct. 23, 1990).

Finally, Plaintiffs have alleged that Defendants' bills are heavily redacted

and block billed, preventing their assessment of the fees at issue.  (*See* D.I. 387 at

17-18; D.I. 408 at 8.)  For the final time, Plaintiffs' own conduct betrays them, as

they have done the exact same thing in their May 10, 2021 production.  (*See* Myre

Fees Decl. Ex. A.)  Even if that were not the case, courts have recognized that

block billing is only a problem when it is necessary to deduct one or more tasks

from an entry. *See U.S. ex rel. Raggio v. Seabord Marine Ltd.*, 2017 WL 2591288,

at *7 (D.D.C. May 4, 2017) ("[B]lock billing entries do not always suffer from

inadequate description. Their infirmity stems from the fact that they represent

activities lumped together in a single entry with no indication how much time was

spent on each task.").  Since Defendants are entitled to recover ***all*** reasonable fees

incurred in the litigation, block billing presents no obstacle to the Court's review.

Similarly, the purported excessive redactions did not prevent Plaintiffs from identifying specific categories of expenditures they consider excessive or unnecessary.  Defendants' invoices provide both the time spent on the redacted tasks as well as appropriate, not-privileged context.

## **CONCLUSION**

For these reasons, Defendants respectfully request that the Special Master recommend an award to Defendants of reasonable attorneys' fees and disbursements in the amount of $10,713,703.42.

Dated:        May 17, 2021

                                                     MORRIS, NICHOLS, ARSHT
                                                     & TUNNELL LLP

                                                     /s/ Lauren K. Neal
                                                     Kenneth J. Nachbar (#2067)
OF COUNSEL:                                          Lauren K. Neal (#5940)
                                                     1201 North Market Street
Michael B. Carlinsky                                 Wilmington, DE  19801
David E. Myre                                        (302) 658-9200
Jesse Bernstein                                      knachbar@morrisnichols.com
QUINN EMANUEL URQUHART                               lneal@morrisnichols.com
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor                        *Attorneys for Defendants C3,*
New York, NY  10010                                  *Inc., Thomas Siebel and David*
(212) 849-7000                                       *Schmaier*
michaelcarlinsky@quinnemanuel.com
davidmyre@quinnemanuel.com
jessebernstein@quinnemanuel.com

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA  94065
(650) 801-5000
kevinjohnson@quinnemanuel.com