IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERIC BLATTMAN, individually and as an assignee of certain former members of E2.0 LLC, LAMB FAMILY LLC, and DAVID STAUDINGER, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. No. 15-530-CFC ) |
| THOMAS SIEBEL, DAVID SCHMAIER, JOHN DOE 1, and JANE DOE 2, | ) **CONSOLIDATED** ) ) |
| Defendants, | ) ) |
| C3, INC., d/b/a C3IoT, | ) ) |
| Defendant, Counterclaim Defendant. | ) ) |

**REPORT AND RECOMMENDATION OF SPECIAL MASTER**

**INTRODUCTION**

By Order of the Court dated April 30, 2021, Chief Judge Connolly referred to me, as a Special Master, Defendants' Renewed Motion for Attorneys' Fees. (D.I. 397, 418) The genesis of the Parties' dispute is a 2012 stock-for-stock merger of two start-up companies - Efficiency 2.0, LLC ("E2.0") and C3, Inc. ("C3"). Both companies were founded in 2009, E2.0 by plaintiff Blattman and non-party Thomas Scaramellino, C3 by defendant Siebel. E2.0 and C3 entered into an Agreement and Plan of Merger ("the Agreement") dated April 30, 2012. As relevant to the instant dispute, Section 7.3 of the Agreement provided that if "any Legal Proceeding relating to this Agreement or the enforcement of any provision of this Agreement is brought against any party hereto, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and

1

disbursements (in addition to any other relief to which the prevailing party is entitled)." (D.I. 376 at 51)

The above-captioned litigation was instituted by Plaintiffs in October 2014, asserting claims against Defendants for securities fraud, common law fraud, and breach of contract. (D.I. 1, 190) The case was aggressively litigated over the ensuing years, culminating in 32 depositions being taken, over a half million pages of documents being exchanged, and a seven-day bench trial being conducted by Chief Judge Connolly. By Opinion dated January 29, 2020, Chief Judge Connolly found in favor of Defendants on all three claims for relief alleged in Plaintiffs' Second Amended Complaint (D.I. 190) and Answer and Counterclaims (D.I. 120), a judgment that was later affirmed by the United States Court of Appeals for the Third Circuit. (D.I. 407-2) Chief Judge Connolly held, "[b]ecause Defendants prevailed on all claims, Defendants are entitled to fees and costs." (D.I. 376 at 51) The Third Circuit in its decision again affirmed, holding that "[b]ecause Plaintiffs did not prevail on the chief issues, we hold the trial judge correctly found C3 to be the prevailing party entitled to attorneys' fees and costs under the Merger Agreement." (D.I. 407-2 at 13)

## LEGAL STANDARD

The parties do not dispute that fee-shifting provisions are enforced under Delaware law and that the Agreement contains a fee-shifting provision in Section 7.3.[1] The parties instead disagree about whether the above language should be interpreted "to be an all or nothing clause or to be susceptible to a more balanced claim-by-claim application." *Brandin v. Gottlieb,* 2000 WL 1005954, at *27 (Del. Ch. July 13, 2000).

---

[1] Which provides in relevant part that "the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements."

Not surprisingly, Defendants have advocated the all-or-nothing approach as described, *e.g.,* in *Brandin v. Gottlieb,* 2000 WL 1005954, at *27. More specifically, then Vice Chancellor Strine explained that it is the court's duty "to give effect to the most reasonable reading" of a fee-shifting provision. In *Brandin,* the language at issue provided that "[t]he party prevailing in any action, suit or proceeding shall be entitled to receive from the losing party prompt reimbursement of all reasonable legal fees and disbursements incurred by the prevailing party in connection with such action, suit or proceeding." 2000 WL 1005954, at *26. The court found it

> difficult to see the inequity in giving the words of the contract their ordinary meaning . . . Having chosen the common term 'prevailing party,' the parties can be presumed to have intended that that term would be applied by the court as it has traditionally done so. And under any traditional application of the term, [plaintiff's] predominance in the litigation entitles her to that appellation. Similarly, the parties chose . . . to grant the prevailing party "in any action, suit or proceeding relating to this Agreement … ***all*** of its reasonable legal fees and disbursements incurred in … connection with such action, suit or proceeding." That is, the parties eschewed a claim-by-claim approach by failing to insert any language in the contract that would authorize the court to exercise discretion to award less than **"all"** prevailing party's fees in a case where the prevailing party had achieved a less than full victory.

*Id.* at 28 (emphasis in original).

The above reasoning has been followed over the years, but not exactly in the way Defendants assert. For instance, in *Comrie v. Enterasys Networks, Inc.,* 2004 WL 936505, at *3 (Del. Ch. Apr. 27, 2004), the court concluded that the language of the fee-shifting provision,[2] "itself the product of long negotiation by sophisticated parties and attorneys, clearly provides for an all-or-nothing approach in identifying the 'prevailing party.'" *Id.* at *2. Although recognizing that the fee-shifting provision "only allow[ed] **reasonable** attorneys' fees," the court held that the provision did not "explicitly tie reasonableness to success in the underlying litigation;… Rather, [the provision] requires a general review of fees to determine if they are

---

[2] "In any action or suit to enforce any right or remedy under this Agreement …, the prevailing party shall be entitled to recover its costs, including reasonable attorneys' fees."

3

reasonable. That is, reasonableness should be assessed by reference to legal services purchased by those fees not by reference to the degree of success achieved in the litigation." *Id.* at *3 (emphasis added). *Accord West Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC,* 2009 WL 458779, at *8-*9 (Del. Ch. Feb. 23, 2009); and *Greenstar, LLC v. Heller,* 934 F. Supp. 2d 672, 697 (D. Del. 2013).

Plaintiffs urge the approach adopted by the Delaware Supreme Court in *Mahani v. Edix Media Group, Inc.,* 935 A. 2d 242 (Del. 2007). According to the court in *Mahani,* "Delaware law dictates that, in fee shifting cases, a judge determine whether the fees requested are reasonable. To assess a fee's reasonableness, case law directs a judge to consider the factors set forth in the Delaware Lawyers' Rules of Professional Conduct [("DLRPC")]." *Id.* at 245-46. Among the factors identified by the court, the following are relevant to the discussion at bar: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; . . . (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; . . . (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent." *Id.* at 246. A court "also should consider whether the number of hours devoted to litigation was 'excessive, redundant, duplicative or otherwise unnecessary." *Id.* at 247 (citing Rule 1,5(a) of the DLRPC). The Delaware Supreme Court ultimately held that the Chancellor had "properly weighed all the factors in DLRPC 1.5(a)" in finding the full amount of defendant's attorneys' fees and expenses reasonable. *Id.* at 248. *Accord Global Link Logistics, Inc. v. Olympus Growth Fund III, L.P.,* 2010 WL 692752, at *1-2 (Del. Ch. Feb. 24, 2010); *Danenberg v. Fitracks, Inc.,* 58 A.3d 991, 995-96 (Del, Ch. 2012). The judge in *Danenberg* explained further that "[d]etermining the reasonableness of amounts sought

'does not require that this Court examine individually each time entry and disbursement.'" *Id.* at 997.  Nor does it require a court

> to assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic. "For a Court to second-guess, on a hindsight basis, an attorney's judgment … is hazardous and should whenever possible be avoided." . . . The party seeking fees carries its burden to justify a challenged litigation decision by showing that "the services that were rendered [were] thought prudent and appropriate in the good faith professional judgment of competent counsel."

*Id.* (citations omitted).

In light of the Delaware case law recited above, I conclude that the appropriate analytical framework is that found in *ASB Allegiance Real Estate Fund v. Scion Breckenridge,* 50 A.3d 434 (Del. Ch. 2012), which case included a contractual fee shifting provision requiring the reimbursement of "all reasonable fees and costs…, including reasonable attorneys' fees."  The court started with its principal focus "on enforcing the parties' agreement to make the prevailing party whole." *Id.* at 439.  Citing *Willow-Bay Court* for the proposition that "'a contractual provision entitling the prevailing party to fees will usually be applied in an all-or-nothing manner,'" *id.* (citing *Willow-Bay Court,* 2009 WL 458779, at *8), the court nonetheless went on to ensure the reasonableness of the requested fees under the guidance of the Delaware Supreme Court in *Mahani,* that is, considering the factors set forth in DLRPC 1.5(a).  Based upon a review of the record, the court in *ASB Allegiance* found that "the services rendered in this case fall well within the scope of competent counsel's **good faith** professional judgment."  50 A.3d at 446 (emphasis added).

## DISCUSSION

As a starting point, it is evident that the effort spent on this case by the parties' attorneys is generally comparable.  As summarized by Defendants (D.I. 420 at 3-4), both parties used 5

law firms, with Plaintiffs using 26 attorneys expending 13,700 hours on the case, and Defendants using 23 attorneys expending 12.600 hours on the case.  The difference in the total fees charged is due to the hourly rates, with Defendants' national counsel charging a blended rate of approximately $870 per hour, and Plaintiffs' counsel charging less due to a 40% discount made in exchange for a contingency fee.  From this general review, Defendants' attorneys' fees are not unreasonable.

Plaintiffs, however, have posed several specific objections to Defendants' fee request: (1) Defendants should not be permitted to recover fees supporting their own fraud and contract claims, for which they were not the prevailing party; (2) Defendants should not be permitted to recover fees for services provided to third-party Thomas Scaramellino; (3) Defendants should not be permitted to recover fees supporting their "bad-faith" defense to the Holdback Claim; (4) Defendants' invoices cannot be effectively evaluated because they are heavily redacted and block billed; and (5) Quinn Emanuel's hourly rates are unreasonable in the local community and for the tasks performed.

The last of these objections has no foundation in Delaware case law or practice and, indeed, Plaintiffs cited no authority for the proposition that Quinn Emanuel's fee award should be reduced to bring its rates "in line" with those of its Delaware counsel.  (D.I. 425 at 15)  Both Delaware's Court of Chancery and this Court attract cases that are national in scope and importance, and which are litigated by attorneys from the largest national law firms.  The hourly rates charged by these out-of-state lawyers need to be reasonable when compared to those of other similarly situated lawyers, not with those of Delaware lawyers.  *See, e.g., In re TransPerfect Global, Inc.,* 2021 WL 1711797, at *24-27 (Del. Ch. 2021) (finding hourly fees of $695 to $1,120 for associates and $1,225 to $1,775 for partners reasonable, in the context of

analyzing reasonableness under DLRPC Rule 1.5(a)).  Therefore, I recommend that this objection be rejected.

I also recommend that the first two objections identified above be rejected.  Whether a court adopts the "all-or-nothing" approach of *Brandin* or the more nuanced approach explained in *Mahani,* I suggest that "reasonableness" under Delaware law is judged by whether the legal services purchased by those fees were performed competently and in good faith, "not by reference to the degree of success achieved in the litigation.'"  *Mahani,* 935 A,2d at 248 (citing *Comrie,* 2004 WL 936505, at *3).  Indeed, the Delaware Supreme Court in *Mahani* distinguished between contractual and statutory fee-shifting cases, with only the latter involving fee shifting "in proportion to their success as an incentive for other attorneys to prosecute cases that enforce legislative goals."  *Id.* at 248.  Looking at this case as a whole in light of the serious nature of the allegations, the length and complexity of the litigation, and Chief Judge Connolly's ultimate findings of fact and conclusions of law (*see, e.g.,* D.I. 376 at 11 n.2, 21, 31, 51), Plaintiffs have identified no valid basis to question whether the professional services rendered by Defendants' attorneys in connection with the objections under consideration were "thought prudent and appropriate in the good faith professional judgment of competent counsel.'"  *Danenberg,* 58 A.3d at 997 (citation omitted).

The question is closer with respect to Plaintiffs' objection to reimbursement of fees supporting Defendants' "bad faith" defense to Plaintiffs holdback-based contract claims. Clearly Chief Judge Connolly found that Defendants acted in bad faith from the time of their indemnification notice through trial (D.I. 376 at 38-42), holding that C3 breached its contractual obligations under the holdback provisions of the Agreement.  (*Id.* at 50)  Although Plaintiffs did not ultimately prevail on their claim (because they failed to prove any resultant damages), should

7

Plaintiffs have to reimburse Defendants' attorneys' fees for such bad conduct?  Defendants posit their all-or-nothing mantra in opposition to Plaintiffs' objection, observing that "nowhere did either the district court of Third Circuit suggest that Defendants should only be considered a 'partial' prevailing party."  (D.I. 426 at 5)  Likewise, no case on point has been identified where a prevailing party has been docked fees for bad faith conduct called out by the court.  In the end, however, the determination of a **reasonable** fee award is a discretionary one, with good faith an overarching consideration in the reasonableness inquiry.  *See, e.g., Mahani,* 935 A.2d at 245; *Danenberg*, 58 A.3d at 995.  The Court's findings of fact in this regard provide a sound basis for concluding that the legal services rendered by Defendants' attorneys in connection with the holdback claim "fall [outside] the scope of competent counsel's good faith professional judgment," *ASB Allegiance,* 50 A.3d at 446; i.e., they are not **reasonable** fees.  I, therefore, recommend that Plaintiffs' objection to reimbursing Defendants their attorneys' fees related to the holdback claim be upheld.

In terms of the amount of the reduction, I also recommend that the amount suggested by Plaintiffs be adopted.  Plaintiffs have noted in connection with their fourth objection that Defendants' invoices are replete with block billing and redactions.  Block billing is not "objectionable *per se*," and is fully recoverable as long as the court can adequately review the time records submitted.  *Concord Steel, Inc. v. Wilmington Steel Processing Co.,* 2010 WL 571934, at *3 & n.22 (Del. Ch. Feb. 5, 2010), *aff'd,* 7 A.3d 486 (Del. 2010).  It is when block billing is combined with redactions that an adequate review of the invoices in this case are stymied.  The redactions, for example, indicate on multiple occasions in a block-billing format that the tasks performed included "research regarding REDACTED," "prepared bench memos on REDACTED," "analyzed REDACTED," "statements of intended proofs regarding

REDACTED," "document searches for REDACTED;" etc. (D.I. 381, Appendix A) Absent the bad faith conduct of Defendants, of course, there would be no reason to question the redactions. But given my recommendation as to the holdback claim, it is necessary to come to some determination as to the amount of time spent on such. Plaintiffs have suggested that Defendants expended "at least 1,145.9 hours on Holdback-related tasks, incurring $998,651.85 in fees when applying their blended rate." (D.I. 425 at 8) Although Chief Judge Connolly, who presided over these proceedings, may have a better basis for judging the extent of Defendants' bad faith conduct and the time wasted (judicial as well as the parties' time) because of it, I do not with the way the invoicing has been presented. I, therefore, recommend that Defendants' fee award be reduced by the amount suggested by Plaintiffs.

## CONCLUSION

For the reasons stated above, I conclude that Defendants should be awarded their reasonable attorneys' fees which, consistent with the definition of "reasonable," do not include those fees related to the holdback claim. I, therefore, recommend that Defendants' renewed motion for attorneys' fees (D.I. 418) be granted in part and denied in part, and that Defendants be awarded $9,715,051.57 ($10,713,703.42 requested minus $998,651.85 withheld) in fees.

Respectfully submitted,

/s/ Sue L. Robinson

Dated: August 10, 2021

Sue L. Robinson
Special Master